## THE HARTFORD AND NEW-HAVEN RAIL ROAD COMPANY *against* KENNEDY.

| 12 | 499 |
|----|-----|
| 71 | 218 |
| 12 | 499 |
| 74 | 474 |
| 12 | 499 |
| 75 | 150 |

A corporation was created, by the legislature, for the purpose of constructing a rail-road, with the general powers and privileges usually granted to corporations for a similar purpose. The capital stock was to be 500,000 dollars, with the privilege of increasing it to 1,000,000 dollars; to be divided into shares of 100 dollars each, transferable as the by-laws should direct; books were to be opened for subscriptions to the capital stock; the directors of the company were authorized to require payment of the sums subscribed to the capital stock; and in case any stockholder should neglect to make payment accordingly, the directors were empowered to sell his shares at public auction, and to apply the avails to such payment, returning the surplus, if any, to him. *A*, with others, signed a writing in these words: " We do hereby subscribe to the stock of said rail-road the number of shares annexed to our names respectively, on the terms, conditions and limitations mentioned in the charter;" paying, at the same time, five dollars, on each share subscribed. On a reduction and apportionment of the subscriptions, ten shares were allowed to *A*, who received from the company a certificate thereof, specifying the sum paid and declaring the residue to be payable by instalments, as they should be ordered by the directors. Subsequent instalments were required, by the directors, which *A* refused to pay. In *assumpsit*, brought by the company, against *A*, for such instalments, it was held, 1. that from the relation of stockholder and company, thus created, a promise by the defendant was implied to pay the instalments in question; 2. that the remedy provided by the clause authorizing a sale of the stock of delinquent stockholders, was cumulative merely, leaving such promise in full force; 3. that consequently, the plaintiffs were entitled to recover.

*New-Haven,*
*July,* 1838.

The Hartford
& New-Haven
Rail-Road Co.
*v.*
Kennedy.

The rule that where a statute creates an offence unknown to the common law, and in the enacting or prohibitory clause points out the mode of proceeding under it, that mode alone can be pursued, is not applicable to beneficial statutes in civil cases.

THIS was an action of *assumpsit* to recover the amount of certain assessments upon ten shares of the stock of this company, held by the defendant as an original subscriber.

The cause was tried at *New-Haven, October* term, 1837, before *Huntington,* J.

At the session of the General Assembly of this state, in *May,* 1833, *James Brewster* and others were incorporated, by the name of *The Hartford and New-Haven Rail-Road Company,* for the purpose of constructing a rail-road from some suitable point in the town of *Hartford* to the city of *New-Haven,* and the navigable waters of *New-Haven* harbour, with the powers, privileges and immunities usually granted to corporations for a similar purpose. The 2nd and 3rd sections of the charter were as follows :

" 2d. Resolved further, That the capital stock of said company shall be five hundred thousand dollars, with the privilege of increasing the same to one million of dollars ; and to be divided into shares of one hundred dollars each ; which shares shall be deemed personal property, and be transferable in such manner as the by-laws of said company shall direct."

" 3d. Resolved further, That the persons named in the first section hereof, or a majority of them, shall open books to receive subscriptions to the capital stock of said company, at such time and place as they, or a majority of them, may appoint, and shall give such notice of the times and places of opening the books as they may deem reasonable, and shall receive said subscriptions, under such regulations as they may adopt for the purpose ; and if more than five thousand shares of stock shall be subscribed, they shall have power to make the shares so subscribed the capital stock of the company, provided they shall not exceed ten thousand shares ; and in case the subscriptions shall exceed ten thousand shares, the same shall be reduced and apportioned in such manner as may be deemed most beneficial to the corporation."

By the 4th section, it was provided, that the immediate government and direction of the affairs of the company should be vested in a board of seven directors, to be chosen by the stock-

holders.   The 5th section made  provision for calling  the first
meeting of the stockholders for  the choice of directors ; and
delared, that in all meetings of the stockholders, each share should entitle the holder thereof to one vote, to be given by said stockholders, in person or by lawful proxy.   The 7th section empowered the directors to make such by-laws, rules and regulations as they should deem needful and proper, touching the disposition and management of the stock, property, estate and effects of the company, the transfer of shares, the duties and conduct of their officers and servants, the election and meetings of the directors, and all matters whatsoever, which may appertain to the concerns of said company.   The 13th section was as follows :

" 13th.  Resolved further,  That the directors of said company may require the payment of the sum or sums subscribed to the capital stock of said company, at such times, and in such proportions, and upon such conditions, as they may deem fit ; and in case any stockholder shall refuse or neglect to make payment pursuant to the requisition of the board of directors, the stock of such stockholders, or so much thereof as shall be necessary, may be sold, by the directors of said corporation, at public auction, after the lapse of six months from the time when the payment became due; and all surplus money, the avails of such sale, after deducting the payments due, and interest thereof, and the necessary expenses of the sale, shall be paid over to such negligent stockholders."

By the 15th section, it was provided, that if the company should not expend the sum of 100,000 dollars upon the railroad within four years, or should not complete it and put it in operation within six years from the granting of the charter, it should be void.

Under this charter, the company was duly organized and established, with its proper officers.   Books of subscription to the stock of the company, after reasonable notice, were opened pursuant to the charter.   The stock was over-subscribed, and was thereupon reduced to ten thousand shares, of one hundred dollars each, and apportioned among the subscribers.

On the 31st of *July*, 1835, the defendant applied to the persons named in the charter, for that purpose, to become a stockholder of the company, and subscribed for twenty shares, paying five dollars on each share by him subscribed.   On the re-

*New-Haven,*
*July, 1838.*

*The Hartford & New-Haven Rail-Road Co. v. Kennedy.*

duction and apportionment of the subscriptions, he was allowed ten shares; and the money by him paid on the shares not allowed, was returned to and accepted by him; and he thereupon became a stockholder of the company, of ten shares of its capital stock. The subscription of the defendant was made, by signing a writing, in the following words: " Whereas the General Assembly of the state of *Connecticut,* at their session in *May,* 1833, passed a resolution to incorporate the *Hartford and New-Haven Rail-Road Company,* with power to construct a rail-road or way from the town of *Hartford* to the city of *New-Haven,* we do hereby subscribe to the stock of said rail-road, the number of shares annexed our names respectively, on the terms, conditions and limitations mentioned in said resolution. *July* 31st, 1835." On the 15th of *August,* 1835, the defendant received from the company a certificate that he was the holder of ten shares of its capital stock, transferable on the transfer books kept at *Hartford ;* which certificate was issued and delivered to the defendant in pursuance of the votes of the company establishing a transfer office at *Hartford,* and is in the following words: " The *Phoenix Bank,* acting as agent for the transfer of the stock of the *Hartford and New-Haven Rail-Road Company : Be it known,* that *Leonard Kennedy,* jun., of *Hartford,* is entitled to ten shares of the capital stock of the *Hartford and New-Haven Rail-Road Company,* on which five dollars on each share has been paid ; the residue payable by instalments, as may be ordered by the board of directors: said shares are transferable on the books of said company at the *Phoenix Bank,* in the city of *Hartford,* by said *Kennedy,* or his attorney, on the surrender of this certificate. In witness whereof, the *Hartford and New-Haven Rail-Road Company* have caused the signature of their agent to be hereunto affixed, in the city of *Hartford,* this 15th day of *August,* 1835. [Signed] *George Beach,* cashier."

Previous to the time of commencing this suit, the company had commenced their road, and expended thereon the sum of 150,000 dollars. The directors required the following instalments on each share of the stock, to be paid, by the several stockholders, *viz.* five dollars on the 5th of *April,* 1837 ; three dollars, on the 2nd of *August,* 1837 ; three dollars, on the 2nd of *September,* 1837 ; three dollars, on the 2nd of *October,* 1837 ;

and three dollars, on the 1st of *November*, 1837 ; and had given due notice to the defendant, that such instalments had been so laid and required to be paid, and had demanded payment thereof from him ; but he had not paid them, or any part of them.

*New-Haven, July, 1838.*

The Hartford & New-Haven Rail-Road Co. *v.* Kennedy.

Upon these facts, the plaintiffs claimed, that they were entitled to recover of the defendant the sums demanded. The defendant claimed, that he was not liable to the plaintiffs to pay such instalments, and that their only remedy against him was, to sell his shares for the non-payment of the instalments, according to the charter. The court charged the jury, that the defendant, upon the facts aforesaid, was liable to the plaintiffs, and they were entitled to recover of him the amount of the instalments, and interest thereon, from the time they were required to be paid. The jury returned a verdict for the plaintiffs accordingly ; and the defendant moved for a new trial for a misdirection.

*W. W. Ellsworth* and *Kimberly*, in support of the motion, contended, 1. That the defendant was not liable to pay the instalments in question, by reason of his relation to the company as a stockholder. There is, at common law, no incidental power in a corporation to tax or assess its members personally. *Andover and Medford Turnpike Corporation* v. *Gould*, 6 *Mass. Rep.* 43. *Idem* v. *Hay*, 7 *Mass. Rep.* 106. *The New-Bedford and Bridgewater Turnpike Corporation* v. *Adams*, 8 *Mass. Rep.* 138. *The Middlesex Turnpike Corporation* v. *Swan*, 10 *Mass. Rep.* 384. *The Franklin Glass Company* v. *White*, 14 *Mass. Rep.* 286. *The Franklin Glass Company* v. *Alexander*, 2 *New-Hamp. Rep.* 380. *The Delaware and Schuylkill Canal Navigation* v. *Sansom*, 1 *Binn.* 70. 75. *Ripley* v. *Sampson* & al. 10 *Pick.* 372.

2. That the defendant was not liable, by reason of any provision in the charter subjecting him. The 2nd section speaks only of the *amount* or *nominal value*. The 7th section only gives power to make by-laws, rules and regulations to carry into effect a *given* power. This section does not create a new substantive power ; it does not *enlarge* the charter ; it gives nothing but what would otherwise be implied ; it would be the same, even if the charter expressly exempted the personal lia-

*New-Haven,*
*July, 1838.*

The Hartford
& New-Haven
Rail-Road Co.
*v.*
Kennedy.

bility of the stockholders.   As to the incidental power of pass-
ing by-laws, see *Ang. & Ames on Corp.* 186, 7.   As to the
13th section, it is to be observed ; first, that this also is not de-
signed to enlarge the substantive powers of the corporation,
but to provide a remedy for duties already existing.   Second-
ly, this section would have been the same if there had been a
clause of personal exemption in the charter ; and hence it can
*furnish no evidence* of a personal liability.   The time and pro-
portion of payment must be fixed by the directors, in order
that the remedy given may be resorted to.   This power be-
longs to the class of *by-laws :* it points out the mode of exe-
cuting what has been otherwise established.   Its object is to
give *definiteness* to the real obligation.   Thirdly, the remedy
given by this section, is not that the stockholders may be *sued,*
but that the stock may be *sold.*   Fourthly, the remedy thus
given is *exclusive,* on the principle that where a statute gives
a new power—[the power to make assessments and require
payment]—and at the same time provides the means of exe-
cuting it, [by sale of the shares,] those who claim the power
can exercise it in no other way.   *Andover and Medford
Turnpike Corporation* v. *Gould,* 6 *Mass. Rep.* 44.   The
*Franklin Glass Company* v. *White,* 14 *Mass. Rep.* 288.
Fifthly, the power of the directors to require payment exists
in all the cases, where (as in *Massachusetts* and *New-Hamp-
shire*) the stock only can be sold.   All the cases go on the idea
that the directors have power to call for instalments ; so that
if the subscribing to those charters implies no assent to pay
personally, why should it in this case ?

   3. That the defendant was not liable by the terms of his
subscription.   The stockholders, by subscribing, intended mere-
ly to *become stockholders*—*i. e.* parties to all the rights and
duties in the charter—and not to enter into *a new collateral
contract.*   The heading is in the simplest form in which the
act of becoming a stockholder can be expressed : it is in effect
merely, *we take so many shares of stock.*   The words, " we
do hereby subscribe to the stock of said rail-road"—evidently
import nothing more ; and the additional words—" on the
terms, conditions and limitations" mentioned in the charter,
are superfluous, or inapplicable to the present case ; for person-
al liability is not one of them.   See the words used in the ca-
ses in 5 *Mass. Rep.* 82.   6 *Mass. Rep.* 45.   7 *Mass. Rep.*

105, 6.   8 *Mass. Rep.* 138.   10 *Mass. Rep.* 384.   14 *Mass. Rep.* 286.   2 *New-Hamp. Rep.* 3৮0.

New-Haven,
July, 1838.

The Hartford
& New-Haven
Rail-Road Co.
*v.*
Kennedy.

4. That the defendant was not liable on any implied promise resulting from the *object* in view by the parties.   The object in view was to be effected in the way agreed upon.   It cannot be supposed that the stockholders were to be forced to go forward, let the loss be what it might.   If they wished to abandon the enterprize, and give up what they had paid, the legislature could not have intended to prevent them.

5. That the defendant did not become liable by virtue of the certificate given him.   In the first place, the certificate was not the making of a new contract, but the evidence of an old one.   Secondly, it was demandable as a matter of right.   It was given in fulfilment of a duty imposed by the charter— *the seal of relationship.*   It would now be flagrant injustice to make it speak for another purpose.   Thirdly, the words— "the residue payable by instalments"—in the certificate, are only words of description or identity: they merely declare a *fact.*   The amount paid having been specified, it is followed by something about the state of the balance.

*Hungerford* and *R. S. Baldwin,* contra, contended, 1. That the terms of the subscription import an express engagement on the part of the subscribers, to pay the sums subscribed, when required by the directors.   This is the only fair construction which can be given to the language used ; especially, when viewed in connexion with the object of the parties ; the requirements of the charter in regard to the capital of the company ; the consideration given and received for the subscription ; and the terms, conditions and limitations specified in the act of incorporation and referred to in the subscription.

First, the object of the company was, to raise its capital, by the sale of shares, as the charter required.   The object of the subscribers was, to provide, by the aggregate of the sums subscribed, the requisite capital to enable the company to fulfil the purposes of its creation ; and to secure, in proportion to the sums subscribed, to each subscriber an interest in its stock and expected emoluments.

Secondly, the charter required that the capital should be not less than 500,000 dollars, nor more than 1,000,000 dollars, to

*New-Haven,*
*July, 1838.*

The Hartford
& New-Haven
Rail-Road Co.
*v.*
Kennedy.

be divided into shares of 100 dollars each, and exchanged, at that rate, for the sums subscribed.

Thirdly, if the aggregate of the subscriptions constitute a real capital of the required amount, then the shares distributed to each subscriber are, at the rate at which they are taken, of equivalent value with the sum subscribed by him.

Fourthly, the terms, conditions and limitations mentioned in the charter, are, that the price of the shares shall be 100 dollars each, payable when required ; that the subscriptions shall not be obligatory until at least 500,000 dollars shall be subscribed ; and that the subscriber shall not be liable to be assessed on his shares beyond the sums subscribed and represented by them.

The language used, in connection with the particulars referred to, is therefore necessarily an *engagement* with the company to pay for the shares received, 100 dollars each, when required by the directors.

2. That this construction not only results from the language used in the subscription and the charter, but accords with the spirit of both. The limitation of the capital stock to a sum not less than 500,000 dollars was made, first, to secure to the public the execution of the work; secondly, to provide for the creditors a capital sufficient for their security; and thirdly, to secure the stockholders themselves against the consequences of an inadequate subscription. All these objects would be defeated, if a subscription to the stock of a definite number of shares did not import an engagement to pay the sum subscribed, or if the agents of the corporation could distribute the shares for less than their specified value in money.

3. That independently of the words of the subscription, the charter, by authorizing the directors to require payment of the sums subscribed, by speaking of it as a *debt due,* drawing interest after the time of payment has elapsed, treats it as a *legal obligation,* on the persons holding the shares, to pay— not an assessment on those shares—but the price of them, to the company.

4. That if the subscription or transfer imposes on the subscriber a personal obligation to pay the price of his shares, when required, the additional remedy given by the charter, of enforcing payment by sale of the shares, is *cumulative* merely. It has never been regarded as the only remedy, except in

cases like those in *Massachusetts,* where an assessment on shares only, is authorized by statute, and no engagement, express or implied, made by the stockholder. The principles claimed by the plaintiffs, as applicable to this case, are established or affirmed in the following cases. *The Union Turnpike Road* v. *Jenkins,* 1 *Caines' Rep.* 3ᴐ1. *Jenkins* v. *The Union Turnpike Road,* 1 *Caines' Ca. Err.* 86. *The Goshen and Minisink Turnpike Road* v. *Hurtin,* 9 *Johns. Rep.* 217. *The Dutchess Cotton Manufactory* v. *Davis,* 14 *Johns. Rep.* 238. *Briggs* & al. v. *Penniman* & al. 8 *Cow.* 395. per *Spencer,* Senator. *Spear* v. *Crawford,* 14 *Wend.* 20. *The Worcester Turnpike Corporation* v. *Willard,* 5 *Mass. Rep.* 80. *Instone* v. *The Frankfort Bridge Company,* 1 *Bibb,* 576. *The City of Baltimore* v. *Howard,* 6 *Har. & Johns.* 383.

*New-Haven,* July, 1838.

The Hartford & New-Haven Rail-Road Co. *v.* Kennedy.

HUNTINGTON, J. This is an action of *assumpsit,* brought to recover of the defendant, an original and continuing stockholder in the *Hartford and New-Haven Rail-Road Company,* the amount of instalments due upon his stock, and ordered to be paid, by the directors of the company, in pursuance of the provisions of the act of incorporation. The defendant resists payment, on the ground that he has made no promise, express or implied, to pay the sums demanded; and that the only remedy for the plaintiffs, on his failure to comply with the order of the directors, is, to sell the stock and apply the proceeds to the payment of the instalments which are due. An answer to a single enquiry, disposes of the principal and most important point in the present case. Did the defendant, by becoming and continuing a stockholder in this company, incur a personal obligation to pay the instalments required by the directors, in the manner prescribed by the charter, on the shares of stock by him originally subscribed, and held by him, at the time such instalments were called for and were due? We think such an obligation was created; and that the law, coinciding, in this case, with justice and good faith, will enforce it. It is true, a promise to pay, in *precise terms,* does not appear to have been made. The defendant has not affixed his signature to an instrument, which contains the words *I promise to pay;* but he has done an equivalent act. He has contracted with the plaintiffs to become a member of their

*New-Haven,*
*July, 1838.*

*The Hartford*
*& New-Haven*
*Rail-Road Co.*
*v.*
*Kennedy.*

corporation, and to be interested in their stock to the extent of one hundred dollars for each share assigned to him, if that amount be required. This contract has been executed on the part of the plaintiffs. The shares which he has agreed to take, and for which a certificate of stock has been delivered to him, are part of a moneyed capital. They are to be paid for in money ; and by voluntarily becoming a member of the corporation under the provisions of this charter, an implied *assumpsit* arises to pay the instalments, on the terms, conditions and limitations mentioned in the charter. This, we think, will be very apparent, when the object for which this corporation was created, and the several provisions in the act, are carefully examined and considered. We concur in the position advanced by the counsel for the defendant, that corporations created by statute, must depend, both for their powers and the mode of exercising them, upon the true construction of the statute. *Head* v. *Providence Insurance Co.* 2 *Cranch* 127. *Bank of the United States* v. *Dandridge* & al. 12 *Wheat.* 64. And we shall apply this legal principle to the case before us.

This company was formed for the purpose of raising the necessary funds in money, to prosecute and complete a work of great public utility. This could be done only by a solid capital of large amount, to be created by the voluntary subscription of individuals, in the form of stock, and to be paid, from time to time, as the exigencies of the work might demand. The regular and prompt payment of the sums required, if not indispensable, was important to the successful issue of the undertaking, and was the means by which the debts of the company were to be discharged. It could not but have been foreseen, by the stockholders, that in carrying on such an enterprize, the agents of the corporation would be compelled to enter into heavy responsibilities for work and labour to be done and materials to be furnished, and to incur other necessary expenses ; and it was as clearly foreseen, that these could be discharged and paid only by the payment in money for the stock received from the company. When, therefore, the subscribers associated under the act, and became stockholders, to effect this object, and which could be accomplished only by the advance of money in payment of the instalments, it seems difficult to give any other legal meaning to

their act, than that it was equivalent to an express promise on the part of the stockholders, to pay their respective proportions of the capital, when lawfully demanded. Such a construction of their engagement harmonizes with the entire design of their association, is in furtherance of its object, does no injustice to the stockholders, and affords all the security which can reasonably be required, by the public or the creditors of the corporation, that the object will be consummated, and the debts of the company faithfully discharged.

*New-Haven, July, 1838.*

*The Hartford & New-Haven Rail-Road Co. v. Kennedy.*

To constitute a promise or undertaking, no precise form of words is necessary. No technical language is required. It is often implied from the terms used, in connexion with the object of the parties. Earl of *Shrewsbury* v. *Gould*, 2 *B. & A.* 487. *Webb* v. *Plummer, Id.* 746. *Randall* v. *Lynch*, 12 *East* 179. In the case of *Marzetti* v. *Williams* & al. 1 *B. & Adol.* 415., it is said the only difference between an express and an implied contract, is in the mode of proof. An express contract is proved, by direct evidence; an implied contract, by circumstantial evidence. The one is established, by the express words used by the parties; the other, by circumstances showing that the parties *intended* to contract.

We think that in the present case, the inference is just, that the subscribers intended to hold themselves responsible for the payment of the assessments upon their stock, when the same should be legally demanded. We have said this inference may fairly be drawn from the object for which the corporation was created, and the manner in which it was to be carried into effect. The object, was the completion of the rail-road; the manner, by creating a substantial capital stock, to be paid in money, whenever it was needed. If such payment cannot be enforced, it is obvious the capital stock required by the charter, may not, and probably would not, be obtained. It may be subscribed; but if the payments may be lawfully withheld, the stock is only nominally created: and on this hypothesis, we are to understand the legislature, when they enacted, that the capital stock of the company should consist of five hundred thousand dollars, with the privilege of increasing it to one million of dollars, to be divided into shares of one hundred dollars each, meant nothing more than that there should be a nominal capital of this amount, leaving it optional with the subscribers to pay or not, as might best suit their interest

*New-Haven,*
*July, 1838.*

The Hartford
& New-Haven
Rail Road Co.
*v.*
Kennedy.

or convenience.  We should hesitate long, before we affixed this meaning to the act ;—a meaning which, in its practical results, might operate as a fraud upon the public, the corporation, and individuals.

This view of the legal effect of the act of the defendant in becoming a stockholder, is much strengthened, by other considerations, to which we propose to refer.  The corporation was vested with power to create a capital stock, to fulfil the objects of the incorporation, or perhaps more properly speaking, the act directed what should constitute the stock, and the manner in which it should be created.  It was to consist of at least five thousand shares, of the value of one hundred dollars each.  The corporation then proposed to each subscriber, to sell him shares of the stock, at the price of one hundred dollars for each share.  This offer was accepted, by the subscribers ; and such acceptance, by legal implication, amounted to a promise, and created an obligation, on the part of the stockholders, to pay for them the price agreed, when the same might be lawfully required of them, by the directors.

This was the legal purport of the transaction, divested of the particular form which it assumed.  *Spear* v. *Crawford,* 14 *Wend.* 20.  The true construction of this charter ought not to depend merely upon the form of the proceedings under it ; but the substance of those proceedings should be regarded, in connexion with the object to be promoted.  The same rules of construction apply to this, as are applicable to every other instrument.  It was certainly competent for the corporation to contract with the stockholders as individuals.  *Dunstan* v. *Imp. Gas Light Co.* 3 *B. & Adol.* 125. per *Parke,* J.  *Hill* v. *Waterworks Co.* 5 *B. & Adol.* 866.  They might prescribe the terms, not inconsistent with the provisions of the charter, upon which all persons should become members of their association.  They had the power to declare the conditions upon which individuals might become proprietors of their stock, subject however to the provisions of the act of incorporation.  *Harlaem Canal Co.* v. *Seixas,* 2 *Hall's Rep.* 504.  Hence, it has never been doubted, that the corporation had authority "to receive of the members, promises for the payment of assessments, [instalments] upon which the corporation would have a cumulative remedy, and be enabled to compel the payment of them in a personal action ; and that

when, upon the faith of these promises, the corporation proceed in their undertaking, there is then a sufficient consideration on their part, and they may lawfully compel the payment, not only by selling the shares of delinquents, but also by enforcing the performance of collateral engagements and promises." *Middlesex Turnpike Corporation* v *Swan*, 10 *Mass. Rep.* 384. The reasonable doctrine is here asserted, that an express promise to pay the instalments on stock, is founded on sufficient consideration, and pre-supposes a power both in the corporation and the stockholder, to make a valid contract regarding the stock;—a power, in one, to sell it; and in the other, to bind himself to receive and pay for it. We are unable to discover the slightest difference in principle, between the case of an individual who voluntarily becomes a stockholder, by agreeing to receive, and actually receiving the stock, consisting in money, without superadding a promise in terms to pay for it, and one where such promise is expressly made. In both cases, the corporation contract to sell or transfer to the stockholder, a specified interest in their corporate funds, called shares; in both, the stockholder agrees to receive it; in both, there is the same legal consideration;—on the part of the corporation, the expenses incurred by them, and a reliance upon the engagement that the instalments will be paid to enable them to proceed in their undertaking;—on the part of the stockholder, the benefit received by him, by his interest in the road, and his right to receive a proportion of the profits of the enterprize.

Additional evidence of the intention of the legislature to create a personal liability upon the stockholders, and of the same intention on the part of the stockholders themselves, is derived from other parts of the charter, and from the terms of subscription, and the certificates of stock. The charter was granted, not merely for the benefit of the owners of the stock, with liberty to them to pay for it or not, as they chose. It was not for their private advantage merely, that they were authorized to enter and possess themselves of lands of others over which the road was located; nor was their interest alone consulted, when their corporate powers were declared forfeited, unless the sum of one hundred thousand dollars was expended upon the road within four years, or if the road was not completed and put in operation within six years from the passage of the act. The

*New Haven,*
July, 1838.

The Hartford
& New-Haven
Rail Road Co.
*v.*
Kennedy.

*New-Haven,*
*July, 1838.*

*The Har-ford*
*& New-Haven*
*Rail-Road Co.*
*v.*
*Kennedy.*

legislature had in view the public interest, and the security of those who might contract with the corporation. *Lees* & al. v. *Canal Co.* 11 *East* 645. Under this act, the proprietors have rights, the public have rights, and creditors, if there be any, have rights; all of which are to be protected. The power given to the corporation over delinquent stockholders who come in by their voluntary act, was intended to be such as to furnish as adequate security as was deemed necessary, that the work should be completed; that funds should be obtained, to prevent a forfeiture of the charter, by a failure to comply with the stipulated conditions, and that the creditors of the corporation should be paid. This security can be considered perfect and complete, only by giving that construction to the act of the individual which constitutes him a stockholder, which, we think, it plainly imports,—a promise to pay the legal assessments, when called for. It was very properly said, by the court, in the case of *Worcester Turnpike* v. *Willard,* 5 *Mass. Rep.* 80., that "the indemnity which a turnpike corporation can, by the statute creating it, claim for the expenses of locating and making the turnpike, arises wholly from the legal toll to be received. And after it is created with all the necessary powers, it may be very uncertain whether the indemnity will be sufficient, as the expenses and the toll are each uncertain : and the directors can have no funds to enable them to contract with or pay the workmen, but the value of the shares when sold, unless they bind themselves personally to the payment. This cannot reasonably be expected from them, without some further security from the proprietors than the value of their shares, which in fact may be unequal to the reimbursement. This further security is, therefore, a reasonable one, and of convenience to the public, so far as turnpikes are a common benefit. There is no legal objection to a contract between the corporation and the individual members of it, more than between a town and any of its inhabitants, when the authority of the corporation to contract with its members, is within the reason of the powers vested in it, and may be necessary for their execution, although this authority may not be expressly given, by the incorporating act, or by any other statute."

The subscription of the defendant was in the following words : "Whereas the General Assembly of the state of *Con-*

*necticut*, at their session in *May*, 1833, passed a resolution to incorporate the *Hartford and New-Haven Rail-Road Company*, with power to construct a rail-road or way, from the town of *Hartford* to the city of *New-Haven*—We do hereby subscribe to the stock of said rail-road, the number of shares annexed to our names respectively, on the terms, conditions, and limitations mentioned in said resolution." One of these conditions is, that the stock shall amount to a real capital of at least five hundred thousand dollars, if necessary for the completion of the work, not a nominal capital merely, or none at all, at the pleasure of the stockholders ; one of the limitations is, that no stockholder shall be compelled to pay more than one hundred dollars for each share ; and one of the terms is, that the directors may require the payment of the sum or sums subscribed to the capital stock of the company, at such times, and in such proportions, and upon such conditions, as they may deem fit. By the act of subscribing for and receiving stock, the defendant, as a stockholder, voluntarily associated with others to raise his proportion of the sum of five hundred thousand dollars, as it might from time to time be wanted, and subjected himself to the requisition of the directors in relation to the payment of instalments. This was a voluntary act on his part. It was an assent to perform what was required of him by the directors, within the terms of the charter. It was a promise to pay in money the amount which he subscribed to pay. Hence the peculiar fitness of the expression in the act of incorporation, "the directors may *require* the *payment* of the sum or sums subscribed to the capital stock," and on failure or neglect to make *payment* pursuant to the requisition of the board of directors, the stock of delinquent stockholders, or so much thereof as may be necessary, may be sold, by the directors, after the lapse of six months from the time the *payment becomes due ;* and the surplus, the avails of such sale, after deducting *the payments due*, and *interest* thereof, and the necessary expenses of sale, shall be paid over to such negligent stockholders. This section of the charter, which, by reference, is made part of the subscription of the defendant, points very distinctly to a personal liability on the part of the stockholders. " *The directors may require payment.*" Requiring payment, as the term is here used, is equivalent to demanding payment ; and if the act of incorporation authorizes

*New-Haven,*
July, 1838.
_____

The Hartford
& New-Haven
Rail-Road Co.
*v.*
Kennedy.

New-Haven,
July, 1838.

The Hartford
& New-Haven
Rail-Road Co.
v.
Kennedy.

a demand of payment, it necessarily confers a legal right to insist upon the performance of the thing demanded; and such a right, of course, implies the additional right to the aid of the ordinary process of the law to enforce it, unless it be taken away or controuled, by other provisions in the charter. Whenever a statute gives or provides any thing, the common law provides all necessary remedies and requisites. *The Protector* v. *Ashfield, Hard.* 62. When, therefore, the defendant affixed his signature to the subscription, by which he freely gave the directors power to demand payment of the instalments, he virtually subjected himself to the legal consequences which would result from a failure to pay money which he had given them authority to require him to pay. He made himself amenable to compulsory process to enforce payment. The section also speaks of "the *payment becoming due.*" Unless a promise to pay may be implied from the act of the defendant and the relation which he sustains to the corporation as a stockholder, it is not easy to perceive, that any payment is demandable, or is due. To say a sum of money may be lawfully demanded, and that it is due, when the person of whom the demand is made, may make the payment, or withhold it, at his pleasure;—may treat it as due or not, according to his good pleasure;—would be a gross perversion of language, and stultify both the legislature who authorized the directors to make demand of the moneys subscribed, and the individual who voluntarily assented to be subject to the exercise of that authority. We are to understand the language used, according to its plain, obvious meaning. It is not to receive any strained interpretation or forced construction; and when understood in its ordinary and familiar signification and import, and according to its general and popular use, it cannot be doubted that the acknowledgment of a debt due for instalments of stock, and of the right to demand payment of them, is equivalent to a promise to pay, which the law will enforce. *Kellogg* v. *Union Company*, 12 *Conn. Rep.* 7. Is there any substantial difference between such acknowledgment, and one expressed in these words, "Due *A. B.* 100 dollars, on demand," which has been held to import an express promise to pay on demand? *Smith* & al. v. *Allen*, 5 *Day* 337. Or "Due *A. B.* $325, payable on demand," which, it has been decided, is a promissory note within the statute; the acknow-

ledgment of indebtedness on its face, implying a promise to pay *New-Haven, July, 1838.* on demand? *Kimball* & al. v. *Huntington*, 10 *Wend.* 675. Or " *I. O. U.* 100*l.*," which is evidence, in support of a count in *assumpsit* for money lent, of an acknowledgment of a debt? *Fisher* v. *Leslie*, 1 *Esp. Rep.* 426.    *Israel* v. *Israel*, 2 *Campb.* 499.    *Childers* v. *Boulnois, Dowl. & Ryl. N. P. Ca.* 8.    *Robarts* v. *Robarts*, 1 *Mo. & Pay.* 487.    So also the stock may be sold for the *interest* on the payments due. Interest is given as damages for the detention of a debt, or the non-performance of a contract.    It is difficult to discover by what rule of equity, interest can be required to be paid, where there has been no default of payment of principal,—where there is no debt due, nor any contract unperformed.    If there was no personal obligation to pay the instalments, the stockholder has been in no default.    He has not neglected to pay a legal debt, nor failed to discharge a valid agreement.    And why should interest be charged on that which is no debt, and which could not be enforced, by a court of law or chancery?

*The Hartford & New-Haven Rail-Road Co. v. Kennedy.*

The certificates given by the company and accepted by the stockholders, furnish still further evidence of their intention to become personally liable to pay the instalments.    They declare in effect, among other things, that the residue of the sums due on the stock, is payable by instalments as may be ordered by the board of directors.    No language could more fully admit a liability to make payment, when ordered; and if it exist, it would seem that it must arise from the promise implied in the relation of stockholder and company under this charter—a relation created by the voluntary act of the parties.

It seems to us, also, that the intention of the legislature to impose a personal liability upon the stockholders for the assessments which are ordered, is fairly to be inferred from the consideration, that, had no authority been given to sell the shares of delinquent proprietors, such liability would have been created; otherwise, the whole object of the act of incorporation might be defeated, and a wide door opened to the perpetration of the grossest frauds upon the corporation and their *bona fide* creditors.    If the charter had made no provision for the sale of the shares, and all the other provisions had been retained, could any reasonable doubt be entertained that the stockholders would have been personally liable to pay the instalments? Would not the law raise a promise to pay, from their engage-

*New-Haven,*
*July, 1838.*

The Hartford
& New-Haven
Rail-Road Co.
*v.*
Kennedy.

ment to take the stock at a certain value, and the authority given to the directors, both by the charter and by the stockholders, to require payment? Is it to be presumed that the legislature intended to create a corporation, with a solid fixed capital, to consist of stock in shares of a certain value; with power to demand payment for it of those who voluntarily became stockholders under the provisions of the charter; with authority to do every thing necessary to effect the object of the incorporation; to possess themselves of the lands of third persons; to contract debts to an indefinite amount; and yet with permission to the proprietors to withhold payment, if they pleased, and thus enable them to defeat the object of the act, and defraud innocent persons? If the legislature, upon the application of this company, had assisted them, by an issue of state stock, to be sold for their benefit; or had advanced moneys in aid of their enterprize; or had authorized a subscription to the capital stock in behalf of the state, on which the instalments had been regularly paid; would it not be a perversion of the spirit and words of the charter, as well as a fraud on the state, so to construe the act of incorporation, as to allow the private stockholders the benefit of these funds, and exonerate them from personal liability for their instalments? We think it very clear, that aside from the clause authorizing the sale of the shares of negligent proprietors, the relation of stockholder and company, as created under this charter, implies a promise to pay for the stock.

Perhaps it is not unreasonable to infer such to have been the opinion of the supreme court of *Massachusetts*, both from their adoption and application of a rule, that where a statute gives a new power, and at the same time provides the means of executing it, it can be executed in no other way, and from the language used by *Sewall*, J., in giving the opinion of the court in the case of *Middlesex Turnpike Corporation* v. *Swan*, 10 *Mass. Rep.* 384. Referring to the case of the *Andover and Medford Turnpike* v. *Gould*, 6 *Mass. Rep.* 45., which is the first case in which such a rule was applied, directly, to a turnpike corporation, he says: " The statute which created the power of assessing, also ascertained the remedy to compel the payment of assessments; and no implied promise or personal duty results from a consent to become a proprietor of shares in a turnpike, *where the corporation is established*

*New-Haven,*
July, 1838.

The Hartford
& New-Haven
Rail-Road Co.
*v.*
Kennedy.

*with the power and remedy of assessments.*" If no such power and remedy were provided, would the court have said no implied promise would have resulted from becoming a stockholder?

If, therefore, without the clause giving the directors power to sell the stock of delinquent stockholders, a promise would have been implied to pay the instalments, the only remaining enquiry is, ought this clause so to operate as to rebut this implication? Is the remedy which it provides, cumulative merely, leaving the promise in full force, or does it abrogate the promise which is implied in voluntarily becoming stockholders in the company? This enquiry, we propose to answer.

The argument of the defendant has proceeded mainly upon the ground that it is by virtue of the 13th section alone, (which gives the authority to sell) that *any* remedy exists to enforce the payment of instalments. We have already examined this argument; and we think it unsupported, by any fair construction of which the act of incorporation is susceptible. The views we have expressed on this point, are believed to be eminently just, and in accordance with the spirit and fair meaning of the plaintiffs' charter, and the act of the defendant voluntarily becoming a stockholder and subjecting himself to all the obligations imposed by the act of incorporation. We think also, they are sustained by high authority. *Union Turnpike Co.* v. *Jenkins,* 1 *Caines' Rep.* 380. *S. C.* 1 *Caines' Ca.* in Err. 86. *Spear* v. *Crawford,* 14 *Wend.* 20. *Bear Camp River Co.* v. *Woodman,* 2 *Greenl.* 404. *Instone* v. *Frankfort Bridge Co.* 2 *Bibb,* 576. *Mayor,* &c. *of Baltimore* v. *Howard,* 6 *Harris & Johns.* 383. *Dugan* v. *Mayor,* &c. *of Baltimore,* 1 *Gill & Johns.* 499. *Bergen* v. *Clarkson,* 1 *Halst.* 352. *Bond* v. *Susquehannah Bridge and Banking Company,* 6 *Harr. & Johns.* 128.

The counsel for the defendant, in the course of the argument addressed to us, have insisted, that whatever personal obligations might have been incurred under this charter, on the part of the stockholders, had not a specific remedy been provided for their defaults; yet that the 13th section, which gives authority to sell the shares of negligent stockholders, is the only remedy which can be pursued, and excludes the responsibility which the common law would otherwise have implied and enforced. We have heretofore adverted to this section for

New Haven,
July, 1838.

The Hartford
& New-Haven
Rail-Road Co.
v.
Kennedy.

another purpose, and shall now consider it more particularly with reference to the inference drawn from it, by the defendant. This duty is imposed upon us, as well from the importance of the principle assumed, as from the great respectability of the precedents which have been cited in its support. The section is in these words: "That the directors of said company may require the payment of the sum or sums subscribed to the capital stock of said company, at such times, and in such proportions, and upon such conditions, as they may deem fit; and in case any stockholder shall refuse or neglect to make payment pursuant to the requisition of the board of directors, the stock of such stockholder, or so much thereof as shall be necessary, may be sold, by the directors of said corporation, at public auction, after the lapse of six months from the time when the payment became due; and all surplus money the avails of such sale, after deducting the payments due, and interest thereof, and the necessary expenses of the sale, shall be paid over to such negligent stockholder." The position advanced and applied to the case before us, is, that when a statute gives a new power, and, at the same time, provides the means of executing it, those who claim the power, can exercise it in no other way. If a power is created in the plaintiffs to direct the instalments to be paid, they can enforce the payment in the method directed by the act of incorporation, and not otherwise; and that method is by the sale of the delinquent's shares. Such a position we find stated in several cases decided by the supreme court of *Massachusetts*, and is supposed to be the basis of several decisions by that court, in which it has been held, that where certain corporations were created with the powers and privileges, and subject to the duties contained in the statutes defining the general powers and duties of such corporations; and where the only remedy provided by the statutes for the collection of the assessments upon the shares, when payment is neglected, is by sale of them; that remedy alone can be pursued, unless there be an express agreement to pay them. These precedents have been followed, by the supreme courts of *Maine* and *New-Hampshire*. *Andover and Medford Turnpike Corporation* v. *Gould*, 6 *Mass. Rep.* 40. *Idem* v. *Hay*, 7 *Mass. Rep.* 102. *New-Bedford and Bridgewater Turnpike Corporation* v. *Adams*, 8 *Mass. Rep.* 138. *Middlesex Turnpike Corporation* v. *Swan*, 10 *Mass. Rep.*

384.   *Franklin Glass Company* v. *White,* 14 *Mass. Rep.*
286.   *Chester Glass Company* v. *Dewey,* 16 *Mass. Rep.*
94.   *Salem Mill Dam Corporation* v. *Ropes,* 6 *Pick.* 23.
*Proprietors of Newburyport Bridge* v. *Story,* 6 *Pick.* 45.
*in notis.    Ripley* v. *Sampson* & al. 10 *Pick.* 371.    *Cutler* v.
*Middlesex Factory Company,* 14 *Pick.* 483.    3 *Fairfield's
Rep.* 588.    *Franklin Glass Company* v. *Alexander,* 2
*New-Hamp. Rep.* 380.    These decisions emanate from high
authority, and are entitled to great respect.    We are far from
being satisfied that they are applicable to the case before us.

In the case of *Andover and Medford Turnpike Corpora-
tion* v. *Gould,* 6 *Mass. Rep.* 43. it is said, the tenth section of
the *Massachusetts* act enacts, that whenever any proprietor
shall neglect or refuse to pay a tax or assessment agreed on
by the corporation, to their treasurer, in sixty days after the
time set for payment, the treasurer may sell the share of the
delinquent proprietor at public auction for the payment of the
tax and the charges of sale.    The words of this section are
not as strongly indicative of the intention of the legislature to
create a personal obligation to pay the assessment, as those of
the 13th section of the plaintiffs' charter.    They give no au-
thority, in terms, to *demand* payment ; nor do they refer to the
assessment as a *debt due* and recoverable.    They rather im-
ply, perhaps, that no debt was intended to be created by be-
coming a stockholder ; and that, if a tax is assessed, it is to be
collected only by a sale of the shares.    Hence the general act
relating to turnpike corporations is considered as bearing a
strong analogy, in this particular, to the acts authorizing the
collection of county, town, and society taxes, and taxes laid by
the proprietors of common fields.    *Andover and Medford
Turnpike Corporation* v. *Gould,* 6 *Mass. Rep.* 40.    *Ged-
ney* v. *Tewksbury,* 3 *Mass. Rep.* 307.    In the act incorpora-
ting the plaintiffs, express authority is given to demand and
require payment of the instalments.    They are considered as
debts due and unpaid ; and the neglect or refusal to discharge
the obligation to make payment, authorizes the use of the ad-
ditional remedy of a sale of the shares.

It is supposed there are other broad lines of distinction be-
tween the act which has received a judicial construction in the
first case cited from *Massachusetts,* and the act on which the
plaintiffs' right to maintain this action is founded.    It is under-

*New-Haven,*
*July, 1838.*

The Hartford
& New-Haven
Rail-Road Co.
*v.*
Kennedy.

stood, that in the former, the amount of the capital to be invested, is not fixed, by the legislature. It is, to some extent at least, dependent upon the will of the corporation. The power to make assessments is not expressly given, by the act defining the general powers and duties of turnpike corporations, but is only implied from the authority given in the tenth section of the act, to sell the shares of delinquent proprietors. *Andover and Medford Turnpike Corporation* v. *Gould,* 6 *Mass. Rep.* 43. 44. The discretionary power of these companies to create a large or a small capital, as their interest may require, coupled with the fact that the power to order any assessment arises solely by implication from the authority given to make sale of the shares, may, possibly, justify the inference that " the legislature considered such sale as an adequate remedy to recover the assessments." The shares are not valued at any given sum, in this act. They are not a part of any definite, fixed capital, required by law. No assessment can be made upon them, by virtue of an express statute enactment. The corporation have power to agree on a tax of the shares of the proprietors ; but this power is only inferred from the authority given to sell, on failure to pay the tax. When, therefore, the legislature have not thought the public interest, or the just rights of third persons required the creation of a certain capital, but left the amount optional with the company; and when they have given no other authority to raise a capital in money, (independent of the payments voluntarily made by the proprietors,) than by sale of the shares of delinquent stockholders ; it is not, perhaps, very unreasonable to give such a construction to their statute, as will confine the company to the exercise of the power expressly given. The power to assess is inferred from the power to sell ; and the latter may, therefore, be considered as the only mode in which the former, for any practical purposes, can be exercised. It might be said, with some plausibility, that no general rule would be more just, or better adapted to carry into effect the intention of the legislature, than that which should declare, that when an authority to impose a tax upon the shares of the members of the corporation is derived solely by implication from the power to sell the shares on failure to pay the tax, every other mode of collection is excluded, when there is no express promise to pay. In such a case, it might be said, the intention would be manifest, to make the

amount of capital paid in, dependent upon the will of the stockholders, or upon the sale of the shares; that the proprietor does not incur a personal obligation to pay any thing; but the company are clothed with authority to raise the necessary funds, by a sale of the stock, upon the neglect of the stockholder to pay the just and equal assessments laid upon it. In this view, the assessment may be considered as made upon the stock merely, and the remedy in the nature of a proceeding *in rem.* Such would seem to be the import of the language, used in some of the cases referred to.

*New-Haven,*
July, 1838.

The Hartford
& New-Haven
Rail-Road Co.
*v.*
Kennedy.

In *Franklin Glass Co.* v. *White,* 14 *Mass. Rep.* 286. the court, in commenting on the cases cited by counsel from *Esp. Dig.* 7., to sustain the position that if a person becomes a member of any society or company, he thereby agrees to abide by all legal claims arising against him from the by-laws or local regulations of that society to which he belongs, (2 *So. Car. Const. Rep.* 215.) say, "in the cases cited from *Espinasse,* the penalties or assessments were set upon the *persons,* not upon the *shares,* as is the case under our statutes."

In *Ripley* v. *Sampson* & al. 10 *Pick.* 371., *Shaw,* Ch. J., says, "the individual liability of stockholders created by the statute of 1808, was of a particular and limited character; and could only be enforced in the manner pointed out in the statute. It did not subject a living stockholder to a general liability for assessments, but only authorized the company to sell the shares for payment of the assessments. *By operation of law, the assessment is a lien upon the share.* The share is in the same condition with any other pledged property." And in *Cutler* v. *Middlesex Factory Co.* 14 *Pick.* 483., the same judge uses similar language. "The only compulsory mode which a manufacturing corporation has, to enforce the payment of assessments, is, by sale of the share. *By law, the assessment is a lien on the share.* The executor has an option to redeem the share for the benefit of the estate, by payment of the assessment, as he would have to redeem any other pledged property; and this option he will exercise according to his views of the interest of the estate."

A similar distinction is taken between assessments upon the person and upon the stock or property, in the case of *The Trustees of the Congregation in Hebron* v. *Quakenbush,* 10 *Johns. Rep.* 217. In that case, the pew on which the assess-

*New-Haven,*
*July, 1838.*

The Hartford
& New-Haven
Rail-Road Co.
*v.*
Kennedy.

ment was made, had been sold to the defendant free of rent; and the pews were sold at a high price, in consequence of this exemption. The statute vests the possession of the church in the trustees; and gives them power to "regulate and order the renting of the pews therein." About six months after the sale of the pews, the congregation passed a vote, that if any assessment was made on the pews, and it remained unpaid for one month, the pews should be sold for the benefit of the congregation. No promise of the defendant to pay rent was shown; but he continued to be a member of the congregation, and occupied the pew he had purchased; and the action was brought to recover his proportion of the salary of the minister, assessed by the plaintiffs on all the pews. The court, in giving judgment for the defendant, say, " whether the assessment of the pew rent was a valid assessment, we need not now enquire; for the defendant is not chargeable, in this case, upon the implied *assumpsit* to pay, in consequence of the occupation of the pew. The trustees have no power to make and levy personal assessments; and the owner of the pew is not liable *in personam*, unless there be some special ground from which to infer a contract and promise to pay. The facts in this case are not sufficient to furnish such an inference."

We are confirmed in the suggestions we have ventured to make touching the decision in *Massachusetts,* by adverting to the language of *Sewall*, Ch. J., in *Phillips Limerick Academy* v. *Davis*, 11 *Mass. Rep.* 113. Referring to the cases decided by the supreme court of that state, in which it was held, that no implied obligation on the part of the corporators to pay their assessments, arose from their being voluntarily members of the corporation, he says, "it is said, that these decisions were upon the ground of another remedy provided by the legislature in the act of incorporation. *But that was not the sole ground, if it is in any respect a reason for those decisions.*" And upon no other principle than that the payment of the assessments was *intended* to be enforced only by a sale of the stock, inasmuch as the power to assess was implied merely from the power to sell, can we consider the remarks of the court in *Andover and Medford Turnpike Corporation* v. *Gould,* 6 *Mass Rep.* 40., as having any just application. " Persons not interested in having the turnpike, either from their situation or private property, may be request-

ed to associate and become corporations. They may not be *New-Haven,* able to judge of the probable expenses or profits. But if they July, 1838. know that if the assessments become grievous, they may aban- The Hartford & New-Haven don the enterprize, by suffering their shares to be sold, they Rail-Road Co. may, on this principle, join the association." This language, *v.* Kennedy. upon the supposition that no personal liability was *intended* to be imposed upon the proprietors, would be consistent with the good faith and moral honesty due to the creditors of the corporation.

If the plaintiffs' charter is compared with the provisions of the *Massachusetts* act, as stated in the reported case, a wide difference will readily be perceived between them, in the particulars which have been mentioned. In their charter, the amount of the capital is not made to depend upon the caprice or the voluntary act of the corporation. " *It shall be* five hundred thousand dollars, with the privilege of increase to one million of dollars, to be divided into shares of one hundred dollars each." The company is vested with all powers, privileges and immunities, which are or may be necessary to carry into effect the purposes and objects of the act, and is empowered to purchase, receive and hold such real estate as may be necessary and convenient in accomplishing the object for which the incorporation is granted. A certain definite capital is created, by the act, such as was deemed requisite to ensure the completion of the work, and the faithful performance of the contracts of the corporation. Ample provision was made that this capital should not be merely nominal, but real. For this purpose subscriptions were authorized to be received, under such regulations as the persons named in the first section of the act, might adopt. The directors were authorized to require payment for the stock, at such time or times, and in such proportions and upon such conditions, as they should deem fit. They were also authorized to sell the stock of delinquent stockholders ; and a forfeiture of the charter was incurred, if one hundred thousand dollars was not expended upon the rail-road within four years, or the road was not constructed, completed and put in operation within six years from the passage of the act. In all these provisions, great solicitude is manifested to secure the public interest, the rights of creditors, the usefulness of the corporation, the just expectation of the stockholders. A capital sufficiently large was required to be created. The

*New-Haven,*
*July, 1838.*

The Hartford
& New-Haven
Rail-Road Co.
*v.*
Kennedy.

payment of so much as was necessary to ensure the completion of the work within a reasonable time, and to discharge all its debts, was enforced, by the authority given to require payment of the instalments, to sell the shares of negligent proprietors, and by the forfeiture of the charter, if the commencement or completion of the undertaking was unreasonably delayed. It is true, the payment of the assessments is dependent upon the action of the directors. They may limit the actual capital to a less sum than five hundred thousand dollars, if the whole amount is not wanted for the object; but no just fears were entertained that their duties to the public, the corporation and third persons would not be discharged.

In the plaintiffs' charter, the authority to demand payment for the stock, is not merely *implied* from the power given to sell: it is given in express and explicit terms; "the directors may require the payment of the sums subscribed to the capital stock," &c. The power to sell is additional to the power to demand payment, and is not the only power expressly given. Hence no inference can be deduced that the exercise of the authority to sell, was the only means intended to be provided to secure the payment of the capital stock. The subscriptions to this stock were not like those to the turnpike stock in *Massachusetts,*—an engagement to take a certain number of shares of uncertain value, in a company without any fixed capital,—but an engagement constituting the subscribers stockholders in a company with a specified capital, the shares of a certain determinate value, and creating an obligation on them to comply with all the terms, conditions and limitations mentioned in the charter, one of which gives authority to demand of them the payment of instalments, as they shall be ordered by the directors.

The form of the certificates of stock issued by the corporations in *Massachusetts,* does not distinctly appear from the reported cases. In the case before us, a certificate was issued and delivered to the defendant, in which it is expressed, that the residue of the sums due for the stock, is *payable* by instalments, as may be ordered by the board of directors.

After a careful examination of the decisions to which our attention has been called, we are inclined to the opinion that the decision first made, (6 *Mass. Rep.* 40.,) and which was subsequently followed in the other cases cited, supposed to be

*New-Haven,*
July, 1838.

The Hartford
& New-Haven
Rail-Road Co.
*v.*
Kennedy.

similar, may be maintained upon principles which are wholly inapplicable to the case before us ; and therefore, that it ought not to be regarded as a precedent.

It will be observed, that the remarks we have made, founded upon the distinctions between the general act of *Massachusetts,* and the plaintiffs' charter, are confined to the act of 1804, and the decision under it, in the case of *Andover & Medford Turnpike Corporation* v. *Gould,* 6 *Mass. Rep.* 40. Several of the cases cited, appear, from the reports, to have been decided with reference to other statutes, in which the distinctions noticed, do not exist,—certainly not all of them,—perhaps none of them. We have taken the leading case on which the defendant relies ; have examined it in connection with the provisions of the act as they are referred to in it ; and pointed out the distinctions between that act, and the act incorporating the plaintiffs. If the subsequent cases do not admit of the same explanation, we may, without impropriety, say of them, that what was considered as a precedent, had been established ; that the maxim *stare decisis* was probably applied to them ; and that the court may have adopted the opinion of Lord *Eldon* in *Townley* v. *Bedwell,* 14 *Ves.* 591., that although they did not mean to say, that a great deal might not be urged against it, yet where there is a decision believed to be in point, it is better to follow it.

We are not sure, however, that the highly respectable judicial tribunal, which decided these cases, was governed by any of the peculiar circumstances to which we have referred ; nor will we confidently assert, that the cases are not strongly analogous to, or are distinguishable from, the present case. If the court are to be understood as establishing and applying to all statutes in no sense *penal,* the position that where a new power is given by a statute, which also prescribes the mode of its execution, those who claim the power can exercise it in no other way, we feel constrained to say, we cannot give to decisions founded on such a position, the force of law in this state. We think the principle on which they are made to rest, when applied to the subject before us, is not " founded in sound reason ;" nor is it sustained by any judicial precedent referred to in the decisions, or which we have been able to find. We believe these cases are the only ones, in which the rule, that where a statute creates an *offence* unknown to the common

*New-Haven,*
*July, 1838.*

*The Hartford*
*& New-Haven*
*Rail-Road Co.*
*v.*
*Kennedy.*

law, and in the enacting or prohibiting clause, points out the mode of proceeding under it, that mode alone can be pursued, has ever been held applicable, by analogy, to all *beneficial* statutes, unless it be the case of *Donaldson* v. *Beckett,* 4 *Burr.* 2408., in the house of lords, upon an appeal from a decree of the court of chancery founded upon the judgment in *Miller* v. *Taylor,* 4 *Burr.* 2303. And if the rule was applied to that case, it is the first and last *civil* case, in *Great-Britain,* which has fallen under our notice, in which it has been held to be of universal application. It is, however, not certain, that the decision in that case has ever been, or is now considered, as warranting the application of the rule to *beneficial* statutes in general. *Beckford* v. *Hood,* 7 *Term Rep.* 620. *Wheaton* & al. v. *Peters* & al., 8 *Peters, pp.* 679. 680., per *Thompson* J. *Nichols* & al. v. *Ruggles* & al., 3 *Day* 145. It is believed, that it is confined principally to *criminal* cases; and is applicable to such cases, because the offence and the remedy are so interwoven, that the one cannot be separated from the other. *Castle's* case, *Cro. Jac.* 644. *Rex* v. *Robinson,* 2 *Burr.* 799. *Rex* v. *Boyall,* 2 *Burr.* 822. *The King* v. *Harris,* 4 *Term Rep.* 202. *Livingston* & al. v. *Van Ingen* & al. 9 *Johns. Rep.* 507. *Almy* v. *Harris,* 5 *Johns. Rep.* 175. In the case of penal statutes, which are construed strictly against the person accused, and where a new offence and the mode of prosecuting it are created in the same clause, it has been supposed that the intention of the legislature to confine the mode of proceeding to that specified in the statute, was sufficiently expressed,—at least such has been the construction in favour of the offender against penal laws. But as to beneficial statutes, a liberal interpretation is to be given in advancement of the objects designed to be promoted. *Camp* v. *Bates,* and cases there cited, 13 *Conn. Rep.* —. As to them, where a common law remedy is not taken away, by the statute which prescribes a new one, the latter is merely cumulative. In the case before us, the power to sell the stock of delinquent stockholders, was given as an additional security to the public, the company and their creditors, that the instalments should be promptly paid. It was to operate as an incentive to the stockholder to make payment, and, at the same time, afford additional facilities to the company, to obtain the necessary funds to effect the object of their incorporation. It

was not intended to defeat that object altogether, whenever from the force of circumstances, the stock might be unsaleable, or much diminished in value. And no construction should be given to the plaintiffs' charter, unless the rules of law imperiously require it, which will defeat the object of the grant, impair the public interest, ruin the company, or defraud third persons of their just rights. *The King* v. *Everden*, 9 *East* 101. per *LeBlanc*, J. *Grays* v. *Turnpike Co.* 4 *Rand.* 378. A construction which should limit the power of the company to a sale of the shares when instalments remain unpaid, would, we think, have a tendency to cause these results, and, in many cases, would actually produce them. We cannot adopt it, when neither the words nor the spirit of the act require it ; and when no rule of law demands it.

We might add, that it is by no means clear, that the rule in criminal cases to which reference has been made, would apply to the present case, were this a penal statute ; for that rule is confined to cases where the particular remedy is created in the enacting or prohibiting clause, or where there is, *in terms*, no prohibitory clause.

It is an established principle, that when a new offence is created by an act of parliament, and a penalty is annexed to it, by a subsequent separate and substantive clause, it is not necessary for the prosecutor to sue for the penalty, but he may proceed on the prior clause, on the ground of its being a misdemeanour. *The King* v. *Harris*, 4 *Term Rep.* 202. In the case before us, the authority to sell the stock is in a subsequent distinct substantive clause from those which incorporate the company, create its rights, declare its duties, and authorize subscriptions to the capital stock. The first section of the act creates certain persons therein named, and such others as shall associate with them, a body corporate and politic *in præsenti*. Indeed, the power to sell is predicated upon the existence of the corporation and the formation of the company under the charter. All the acts necessary to give it vitality, are supposed to have been done. It is considered as an existing body corporate, with powers to sue and to contract. It has received the engagement of the stockholders to take the stock ; and their implied promise to pay for it, arises before the remedy by sale can be used : and this remedy being in a separate clause and not declared to be exclusive, is, upon well established principles, only

*New-Haven,*
*July, 1838.*

The Hartford
& New-Haven
Rail-Road Co.
*v.*
Kennedy.

cumulative. We think, therefore, that the cases cited from *Massachusetts, Maine* and *New-Hampshire,* cannot be vindicated, upon the grounds on which, it is supposed, they were decided ; that the rule applied to them is confined, principally, to penal statutes ; or if not, they are not within either the letter or spirit of that rule.

It may be added, that if the act of becoming a stockholder under this charter, implies a promise to pay the assessments upon the stock, (which we think it does, for the reasons heretofore stated) a familiar rule in the construction of statutes, justifies us in saying, that the promise is not abrogated, by the additional power given to sell the stock of delinquent proprietors. "A statute made in the affirmative, without any negative, expressed or implied, does not take away the common law. 2 *Inst.* 200. *Co. Litt.* 115. *in notis. Com. Dig., tit.* Action upon Statute. C. *Almy* v. *Harris,* 5 *Johns. Rep.* 175. The party may waive his benefit by such affirmative statute, and take his remedy by the common law ; which, however, does not mean, that the statute is not binding, but that the party may make his election which to proceed upon." 1 *Co.* 64. *Cro. Eliz.* 104. And where a liberal construction is necessary to carry into effect the object of a remedial statute, although it be introductory of a new law, no negative *ought* in general to be implied.

The application of these principles to the case before us, is not difficult. The act of becoming a stockholder pursuant to the provisions of this charter, is one from which the law raises a promise to pay the instalments legally assessed and demandable. The common law furnishes a remedy for a violation of this engagement, by an action of *assumpsit.* The subsequent enactment authorizing the directors to sell the stock, is affirmative in its terms. It does not expressly, or by implication, take away the previous remedy, which the common law has provided. No words are used indicative of an intention to deprive the corporation of their previously existing remedy ; no necessity is perceived why they should be deprived of it ; and every consideration arising from public policy, or connected with good faith and common honesty, demands that this remedy be continued in full force.

One further remark applicable to this branch of the subject, will complete all which we deem it necessary to say upon the

whole case. It is conceded, that had the defendant promised, in express terms, to pay the instalments, an action of *assumpsit* might have been maintained upon that promise. But if the 13th section provides the *only* remedy to enforce the payment, and, *therefore*, excludes an *implied* promise to pay, it is not readily perceived why it should not cause an *express* promise to be legally inoperative. There is no other consideration to support the latter, than that which sustains the former. It is precisely the same in both. The moral obligation to pay is equally strong in both. The same facts, and no other, which, it is believed, raise an implied *assumpsit* in this case, would exist, had an express engagement been superadded. But if the law would not raise a promise from these facts, simply because the act of incorporation has provided another remedy, why will it enforce an express promise founded entirely upon the same facts, with the same remedy continuing in full force? If, in consequence of the particular remedy provided, there is no legal presumption, from the admitted facts, that the stockholders *intended* to become personally responsible, how can the same facts sustain an *express* promise, where the same remedy may be applied? If the foundation of an *implied* promise fails, by reason of the existence of a special remedy provided by the statute, why is not the support of an express promise, as completely taken away, by force of the same remedy?

We consider, therefore, the 13th section of the plaintiffs' charter as affording a cumulative remedy merely; and that neither its language, its object, nor any analogies of the law which are known to us, require us to hold that remedy to be exclusive. *Chapman* v. *Pickersgill*, 2 *Wils.* 145. *Brown* v. *Chapman*, 3 *Burr.* 1418. *Ward* v. *Bird*, 2 *Chitt. Rep.* 582. *Rex* v. *Carlisle*, 3 *B. & A.* 161. *Sharp* & al. v. *Warren*, 6 *Price* 131. *Delaware & Schuylkill Navigation* v. *Sansom*, 1 *Binn.* 70. *Union Turnpike Co.* v. *Jenkins*, 1 *Caines' Rep.* 380. S. C. 1 *Caines' Ca. in Err.* 83. *Goshen Turnpike Co.* v. *Hurtin*, 9 *Johns. Rep.* 217. *Highland Turnpike Co.* v. *McKean*, 11 *Johns. Rep.* 98. *Farmers Turnpike Road* v. *Coventry*, 10 *Johns. Rep.* 388. *Scidmore* v. *Smith*, 13 *Johns. Rep.* 322. *Dutchess Cotton Manufactory* v. *Davis*, 14 *Johns. Rep.* 238. *Wetmore* & al. v. *Tracy*, 14 *Wend.* 250. *Harlaem Canal Co.* v. *Seixas*,

New-Haven, July, 1838.

The Hartford & New-Haven Rail-Road Co.
*v.*
Kennedy.

New-Haven,
July, 1838.

The Hartford
& New-Haven
Rail-Road Co.
*v.*
Kennedy.

2 *Hall's Rep.* 504.   *Idem* v. *Spear,* 2 *Hall's Rep.* 510. *Morris Canal & Banking Co.* v. *Nathan,* 2 *Hall's Rep.* 239.

It is proper to add, that our decision in the present case, has been made with reference to the facts stated in the motion for a new trial.   Whenever other cases arise, in which the facts do not correspond with those disclosed by this record, they will be duly considered.

The opinion expressed at the circuit was correct, and a new trial is to be denied.

In this opinion the other Judges concurred.

New trial not to be granted.