# THE MIDDLESEX TURNPIKE CORPORATION *versus* SAMUEL SWAN.

Where one had engaged to take certain shares in a turnpike road, and to pay all assessments thereon, and afterwards the course of the road was altered by law, it was holden that he was not bound by his engagement to pay the assessments, notwithstanding he had acted in several offices of the corporation, and had. as one of the directors thereof, petitioned the legislature for such alteration.

THIS action was *assumpsit*, to recover the amount of assessments upon six shares in the stock of the said corporation, at the rate of 240 dollars on the share.

Trial was had on the general issue, before *Parker*, J., at the sittings after the last November term in this county, and [ * 385 ] * a verdict for the plaintiff was returned, subject to the opinion of the Court upon the following facts reported by the judge, as proved or admitted at the trial.

The corporation was created by statute of 1805, c. 12, by the provisions of which statute one branch of the turnpike was to pass from a certain point in *Bedford* to and through the town of *Medford*; and another branch from the said point to *the rocks*, so called, in *Cambridge*. On the 25th of July, 1805, the defendant subscribed a memorandum of the following tenor : —

" *The estimate of the whole expense of making the* Middlesex *turnpike is* 40,000 *dollars ; and it is proposed that there be* 400 *shares. We, the subscribers, hereby engage to take the shares set to our respective names, and to pay all assessments which may be laid thereon, conformable to the orders of the corporation;* " and to the defendant's name he set six shares. There were afterwards duly assessed on each share, by two assessments, the sum of 240 dollars, of which the defendant had due notice, and refused to pay them to the corporation.

The defendant was, during several years, chosen and acted as a director, treasurer, and clerk, and particularly in the year 1808 was chosen and acted as director and treasurer. As one of the directors, he subscribed a petition to the legislature, praying for an alteration in the said turnpike road, which alteration was established by the statute of 1807, c. 7, and the road made comformably thereto. This last act passed on the application of the directors of the corporation, of which the defendant was one, and with the consent of the corporation, before either of the assessments were made, but after the defendant had subscribed the said agreement. The said turnpike road has been altered, pursuant to said statute ; and in the

year 1811, another act passed in addition to the act of incorpo-ration.

The defendant lives in the town of *Medford*, and that branch of the turnpike which was to lead to *Medford* has not yet been made, nor any sum of money expended on that route. The defendant supposed that, by the terms of the * subscription, [ * 386 ] he could in no event be personally chargeable with more than 100 dollars on each share; and it was insisted, on his part, at the trial, that he was exonerated from his subscription, so far as it concerned his personal responsibility, on the ground that the turnpike had been located differently from the plan under which he subscribed, as established by the act of incorporation. It was also contended, on his part, that he was exonerated on the ground that nothing had been expended on the *Medford* branch of the turnpike.

But the plaintiffs contended that his acceptance of the offices of director, treasurer, and clerk, and serving in the same, and especially his signing the petition to the legislature for the alteration which was made, operated as a waiver of any right to rescind his contract, and was an assent to all the doings of the corporation.

If the Court should be of opinion that the verdict found for the plaintiffs is right, judgment was to be entered on it, with additional damages; otherwise the verdict was to be set aside, and the plaintiffs to become nonsuit; or the verdict was to be amended according to the opinion of the Court.

*Peabody* for the plaintiffs.

*Bigelow* for the defendant.

SEWALL, J., delivered the opinion of the Court.

This action being upon an express contract, this is to be sufficiently alleged, in point of consideration as well as promise, and is to be proved as it is alleged. The material allegations in the plaintiff's declaration are their incorporation, and the authority to them to make a turnpike road in a particular direction specified by the statute; and a promise, on the part of the defendant, not only to take certain shares in the undertaking, but *to pay all assessments which should be made thereon conformably to the act of incorporation.*

The statute is to be considered as. expressing a grant of the legislature to the members of the corporation; and for the use of this road, when made, the corporation are to be entitled to certain tolls. And according to the further provisions of the statute, the expenditures are to be provided * for by as- [ * 387 ] sessments upon the individual members. For this purpose the corporation are enabled to vote and assess either prospective estimates of expense, or the amount of expenses actually in

curred; and the assessments, when paid, become deposits of stock, according to the respective shares and interest of each corporator.

But shares are contemplated by the legislature as existing previous to the deposits of stock; for the remedy, and the only remedy, for the collection of assessments, is a sale of the shares of delinquent members, as directed by the statute. This is obviously a very inadequate remedy against those who refuse to pay assessments, and who are only known as proprietors of shares by their consent to become proprietors, and by subscribing or undertaking for any specified number of shares.

It was, however, determined, in the case of *The Andover and Medford Turnpike* vs. *Gould*, (1) that the statute which created the power of assessing, had also ascertained the remedy to compel the payment of assessments; and that no implied promise, or personal duty, results from a consent to become a proprietor of shares in a turnpike, where the corporation is established with the power and remedy of assessments. The same doctrine has been since applied in other similar cases.

In a previous case, that of *The Worcester Turnpike* vs. *Willard*, (2) it had been determined that the corporation had authority to contract with their members as individuals, and to receive of them promises for the payment of assessments; upon which the corporation would have a cumulative remedy, and would be enabled to compel the payment of assessments in a personal action; and that when, upon the faith of these promises, the corporation proceed in their undertaking, there is then a sufficient consideration on their part; and they may lawfully compel the payment of assessments, not only by selling the shares of delinquents, but also by enforcing the performance of collateral engagements and promises. [ * 388 ] And in the same case, a subscription of * shares, expressing likewise a promise to pay assessments, was considered as having the effect of a collateral promise; which was enforced in a personal action against the delinquent proprietor, for the recovery of the assessments which had been laid upon his share or shares.

The case at bar is urged for the plaintiffs upon the authority of this decision. And we are not disposed, at this time, to question either the doctrine or the construction of the written promise; and we shall apply both, as they are established by the decision last cited. But other subsequent decisions restrain us to cases identified in every material circumstance, with the case of *The Worcester Turnpike* vs. *Willard*, in relying upon the authority of that decision.

(1) 6 *Mass. Rep.* 45.          (2) 5 *Mass. Rep.* 80

In the case now under consideration, the written promise or subscription of the defendant is of the same import, if not in the same words, as to the payment of assessments.   But on his part, his liability, upon that promise, for the assessments now demanded, is contested upon the ground that the road, to which his collateral promise applied, has never been carried into effect.   His subscription, at least so far as any collateral promise is to be inferred, or any liability to a personal remedy, is restricted to the road then contemplated, and specifically ascertained, by the reference which the subscription and promise, and the capacity of the plaintiffs to receive it, necessarily had to the act of incorporation.   The road therein described and authorized has never been made.   The plaintiffs, therefore, if they allege the essential fact, on their part, of a road made, an expense incurred according to the implied request of the defendant, and to which his undertaking was directed, are unable to maintain the allegation by any proof.   Failing in this, they are not entitled in this action, which supposes a personal remedy against the defendant upon his collateral promise.

To this it is replied, that the defendant consented in the variation of the course of the turnpike road from that originally established to another course subsequently permitted by * an additional statute, to which the defendant was a   [ * 389 ] party in fact as well as constructively; that he was a director of the corporation, and, as such, was nominally a petitioner for the alteration of the road, and officially concerned in making the road finally accepted and undertaken by the corporation.

We cannot, however, after much consideration of the subject, admit the sufficiency of this reply.   At the most that can be made of the tenor of the defendant's subscription, including his express promise to pay assessments, we discern concurrent remedies to which the corporation became thereby entitled, both at the time applicable to a road authorized and established in a particular course.   The probable result of the defendant's engagement as a corporator is, — and in this he may be subject in all respects to the corporate remedy provided by the statute, — that all variations of the road originally established, expenses lawfully incurred connected with the original design, or growing out of it, which the corporation, acting in their artificial capacity, have concurred in and authorized, are within his subscription for shares, his consent to become a proprietor, subject to the by-laws, rules, votes, and undertakings, of the corporation, so far as these are within the scope of the original design, and so far as the legislature may permit; that being the ultimate authority to which each corporator submits himself.   And

this would be an answer to the supposed case of money paid on the original subscription.

The promise, however, connected with this consent to become a corporator, is not to have the same latitude of interpretation. In that promise he is not a corporator, but an individual contracting with the corporation; and he undertakes in that extraordinary manner, referring himself to what the legislature had done, not to any probable subsequent grant. And it is not competent to one of the parties to change the terms of this collateral contract; and as there is no express, so there is no implied, consent, to be deduced from the circumstances proved in the case at bar; where the defendant may have been controlled by the will of the [ * 390 ] * majority; or, if he concurred in the votes and proceedings of the corporation, it was as a corporator, not carrying with his concurrence any renewal of his supposed collateral promise. We decide, therefore, for the defendant in the case reported.

The decision is warranted by the case of these same plaintiffs against *Locke*, (3) which was an action brought upon this same subscription. For the circumstances of this case are entirely the same, avoiding the inference, upon which the plaintiffs have relied in this case, from the facts mentioned of the official characters and employments the defendant has had in this corporation, and his concurrence in the alterations of the road, the circumstances which we have considered, and which we think do not warrant the inference attempted to be drawn from them in the argument for the plaintiffs.

The verdict is to be set aside, and the plaintiffs are to become nonsuit. (*a*)

(3) 8 *Mass. Rep.* 268.
(*a*) [See *Taunton and S. Boston Turnpike* vs. *Whiting*, ante, 327, and cases there cited. — ED.]