## THE PROPRIETORS OF THE UNION LOCKS AND CANALS

*versus*

### JOSEPH TOWNE.

Where an individual had contracted to take a share in a corporation created for the purpose of making a river navigable, and empowered to hold real estate not exceeding six acres, and to collect a toll for forty years, not exceeding 12 per cent. per annum, on the amount of money expended; and afterwards the legislature, upon the petition of the corporation, but without the assent of the individual, authorized them to hold real estate to the amount of 100 acres, and to collect a toll, unlimited as to its amount and duration—it was held that the individual was discharged from his contract, and not liable for any subsequent assessment on the share.

THIS was an action of assumpsit, to recover the amount of seventeen assessments, made by the plaintiffs on a share in the property of the corporation, alleged to be owned by the defendant. The cause was tried here April term, 1816, before *Smith, C. J.*, and a verdict taken for the plaintiffs for five hundred and two dollars, subject to be amended, or set aside, according to the opinion of the whole court upon the evidence as reported by the judge. Much of the testimony it is unnecessary to detail, as the case was decided upon a a single point. The plaintiffs proved their incorporation by an act dated December 23, 1808, an organization under it May 25, 1809, and the property divided into one hundred shares.

This act provides, among other things, that assessments may be collected of members, by a sale of their shares, or by an action; and empowers the corporation to render *Merrimack* river navigable from *Reed's* ferry to *Amoskeag* falls; and for effecting the object, to purchase land not exceeding six acres, and to collect, for forty years only, a toll, not averaging over twelve per cent. on the capital invested. An act in addition to the former was passed June 23, 1809, on the petition of the corporation, which act abolished all limitation on the toll as to amount and duration; and authorized the corporation to purchase and hold one hundred instead of six acres of land. It appeared likewise, that another act was passed December 17, 1812, conferring on *John L. Sullivan*, and his associates, the right of locking *Cromwell's* falls, which were beyond the limits embraced in the act of December 23,

1808. In other respects, its provisions were similar. But said *Sullivan* was empowered to transfer his rights in the above grant to the proprietors of the *Union Locks* and *Canal*, so that it should be considered but a mere addition to the former grants in their favor. This transfer was made and accepted August 4, 1813. Testimony was introduced to shew that the defendant became a member of the corporation in the summer of 1809: but it appeared distinctly, from the same evidence, that neither before nor since had he attended any meetings of said corporation, and probably never knew of the existence of the additional acts. Before becoming a member, he was told that all the assessments on a share would not exceed one hundred dollars, according to the estimation then made of the whole cost of the original object, at eight or ten thousand dollars; and it appeared that the money since expended at *Cromwell's* falls alone, had been not less than six thousand dollars. Of the hundred shares belonging to the corporation, fifty-five are owned by the *Middlesex Canal Company*, who have always employed the said *Sullivan* as their agent. The question raised upon this evidence was the liability of the defendant for assessments made after the passage of the additional acts, to which he had never personally assented.

*J. Parker* and *J. Smith*, counsel for the plaintiffs.

*Noyes*, for the defendant.

Woodbury, J., delivered the opinion of the court.*

This is a dispute between a private corporation and one of its members. A recurrence to the nature of the liabilities of members to their own corporation will, we apprehend, divest the case of many of its difficulties. Every individual owner of shares, whether a petitioner, an associate, or purchaser, expects and indeed stipulates with the other owners, as a corporate body, to pay them his proportion of the expense, which a majority may please to incur in the promo-

---

* Richardson, C. J., having been of counsel for the plaintiffs, did not sit.

Union Locks
and Canals
vs.
Towne.

tion of the particular object of the corporation. By acquiring an interest in the corporation, therefore, he enters into an obligation with it in the nature of a special contract, the terms of which contract are limited by the specific provisions, rights and liabilities detailed in the act of incorporation.

To make a valid change in this private contract as in any other, the assent of both parties is indispensable. The corporation on one part can assent by a vote of the majority; the individual, on the other part, by his own personal act. However the corporation, then, may be bound by the assent to the additional acts, this defendant, in his individual capacity, having never consented to either of them, is under no obligations to the plaintiffs, except what he incurred by becoming a member under the first act. Consequently the assessments sued for, if raised to advance objects essentially different, or the same objects in methods essentially different from those originally contemplated, are not made in conformity to the defendant's special contract with the corporation; and this action, sustainable on that contract alone, cannot be supported. For the purpose of settling this point, we shall assume another, which was contested, as to the defendant's membership, and regard him as having made a valid purchase of one share under the act of December 23, 1808. What then were the obligations imposed on him by that purchase? They were, that he should pay all assessments raised for the objects, and under the restrictions contained in said act, and not that he should be liable for money assessed towards other and more extended objects, or under different and fewer restrictions. If the present action, therefore, be for money raised under the circumstances last supposed, whatever may have been the expediency of its intended appropriation, the defendant can legally exonerate himself from its payment; because not assessed in conformity to his original obligation. Notwithstanding the laudable object and great utility of the additional acts, still, if they effected a material change, he is able to say *non hæc in federa veni.* On exam-

ining the declaration, we perceive that none of the assessments were made before June 23, 1809. Consequently if the act of that date created essential alterations, nothing can be recovered in this suit. But if no such alterations were produced till the act of December 12, 1812, accepted August 4, 1813, then the verdict will be correct after deducting two assessments raised subsequent to that period. That the acceptance of this last act, for locking *Cromwell's* falls, effected a material change in the original corporation, we entertain no doubt. It was, in fact, uniting two distinct corporations. After that acceptance, the money assessed would be raised, not only for the purposes first contemplated, but for constructing a canal in a certain part of the river, wholly without the boundaries included in the first act. Neither the letter nor spirit of the defendant's contract could extend to the payment of money raised for an object which was not originally within the contemplation and power of the parties. The cases of the *Middlesex Turnpike Corporation* vs. *Lock*, 8 *Mass. Rep.* 268, and *the same* vs. *Swan*, 10 *Mass. Rep.* 384, are very analogous. But the act of June 23, 1809, does not vary the boundaries of the canal; and the changes introduced by it are not, therefore, nominally the same with those created by the other. We apprehend, however, that on principle it effects such alterations from the original charter as are equally material with those produced by the law of December 23, 1812. It enables the corporation to repay itself for all expenses incurred, by a toll unlimited in amount and duration, instead of one for forty years, and not exceeding twelve per cent. on the capital invested. It also authorizes them to purchase one hundred instead of six acres of land. The original contract, by the defendant, with the corporation, was to pay all assessments a majority would think it expedient to raise, for improving the navigation of the river within certain limits, and for purchasing not more than six acres of land, towards the promotion of that object; when they must raise those assessments under the restricted right of being repaid only by a specified toll for a definite time.

Union Locks
and Canals
vs.
Towne.

But the money for which this action is brought was assessed for some other objects and under some different circumstances; for purchasing one hundred, instead of six acres of land, and under a right to be repaid by an indefinite toll for an indefinite time, instead of one limited in its amount and continuance. It is impossible to state the case, without perceiving a variation from the contract originally made, and a variation, too, which reaches the gravamen, or essence of the contract. Many a cautious man would be willing to hazard the assessments which might be made on a share under the restrictions of the first act, who would never risk those which his more wealthy, or more adventurous associates might make under the indulgencies of the second one. A proof of the correctness of this suggestion results from the procurement of the second act, before much expense was actually incurred, and also from the large number and great amount of assessments made immediately after it was adopted.

In a case like the present, we should not hesitate to give a liberal and enlarged construction to the obligation of the parties. Had the original act failed in consequence of the first meeting under it having been unseasonably or informally warned, or in consequence of an omission of some provision, usual and indispensable to the transaction of business, an additional act, curing such difficulties, might be presumed to receive the assent of all who adopted the original act. But we think that an assent to amendments extending the objects, or increasing the powers, or enlarging the liabilities of the corporation, is not to be presumed, but must be expressly shewn.

Let the verdict, therefore, be set aside, and the

*Plaintiffs nonsuited.*