[ PHILADELPHIA, FEBRUARY 29TH, 1840. ]

⊹ BOMEISLER and Others *against* DOBSON.

IN ERROR.

1. Where the terms of a special agreement have been performed by the plaintiff, and nothing remains but the mere duty on the part of the defendant to pay money, the plaintiff may recover on the common money counts in assumpsit.

2. Where the evidence of an agreement is both written and parol, it is not error for the Court to leave to the jury the question of the intention of the parties.

ERROR to the District Court of the City and County of Philadelphia.

(Bomeisler *v.* Dobson.)

On the return of the record it appeared, that Robert Dobson brought an action on the case in that Court against Louis Bomeisler and Mitchell Bomeisler, late trading under the firm of Bomeisler & Brother, and George Peterman who survived Jacob Peterman, late trading under the firm of Jacob & G. Peterman.

The declaration contained five counts, viz. 1st, For money had and received; 2d, Money paid, &c.; 3d, Goods sold; 4th, Work and labour done; 5th, On an account stated.

The defendants pleaded non-assumpsit, and payment, and set-off; and on these issues the cause came on for trial before STROUD, J., on the 3d of May, 1839, when the plaintiff offered in evidence the following agreement, which was signed by the parties.

"Agreement made this day between Bomeisler & Brother and Jacob & G. Peterman on the one part, and Capt. Robert Dobson on the other part.

Bomeisler & Brother and Jacob & G. Peterman have this day given the brig Mary under the command of Captain Robert Dobson, and also consign the cargo shipped on board by them, amounting to $7,782 82, to Captain Robert Dobson, to proceed from hence to Samana, there to dispose of the cargo for account of the concerned, and to make remittances in the same vessel as sales shall proceed, unto Jacob & G. Peterman and Bomeisler & Brother, to each one half of the proceeds, or as near as possible.

Captain Dobson binds himself to have a regular set of books open at Samana, of sales, returns, disbursements, and all expenses that may occur; furnishing accounts from time to time, as circumstances will allow. It is understood that Captain Dobson makes no charge of commission on the sales, but that his expenses and that of the vessel be paid by Jacob & G. Peterman and Bomeisler & Brother; and as long as Captain Dobson shall have command of the vessel or remain at Samana on this business, forty-five dollars per month be allowed him.

In case Captain Dobson remains at Samana and the vessel returns, he shall act as ship's husband there.

All and every business conducted or done at Samana, the parties composing this agreement shall be interested in, in equal proportions.

No privilege whatever to be allowed to either party, either on the vessel or cargo.

Nothing whatever to be sent out, or received in return, without the consent or for the interest of all parties concerned.

Should any consignments be made to Captain Dobson at Samana, it shall be with the consent of all parties; and all commissions, &c. arising from such consignments, to be equally divided between the parties composing this agreement.

(Bomeisler *v.* Dobson.)

Should Captain Dobson find it advantageous to the business, to give an interest in it to any person at Samana, he shall be allowed to do so in equal proportion with all parties."

The defendants' counsel objected to the admission of this paper, on the ground of variance from the declaration, but the objection was overruled, and exception taken.

The plaintiff then gave in evidence certain letters from the defendants to him, between the 30th of March, 1829, and the 6th of August, 1830 ; and then closed his case.

The defendants then produced one Andrew Garrett, who testified as follows : " I was clerk and book-keeper of the parties, plaintiff and defendants, at Samana. I went out with the plaintiff, January 1829, and returned in May 1830, and went out again soon after. The plaintiff told me at Samana that he was equally interested with the Petermans—not with the Bomeislers—in the first shipments, and also in the second and third. He said so more than once, twice, or three times. That the defendants had no business to be giving him orders; that he was equally interested; and would do as he pleased. The books produced by the plaintiff here, are not all the books kept at Samana. There were in all three shipments to Samana. The first about eight thousand dollars, the second about one thousand, the third about fifteen hundred dollars."

The following agreement, executed by the parties, and under their seals, was then given in evidence by the defendant.

" Articles of agreement made and agreed upon between Bomeisler & Brother, George Peterman, Jacob Peterman and Robert Dobson, owners of and shippers in the brig Mary, of the city of Philadelphia, of the one part, and Andrew Garrett, of the same place, of the other part, witnesseth : That the said *Andrew* Garrett, for the consideration hereinafter mentioned, doth hereby for himself, his executors and administrators, covenant, promise and agree to, and with the said Bomeisler & Brother, George Peterman, Jacob Peterman and Robert Dobson, their executors, administrators and assigns, by these presents, that he, the said Andrew Garrett, shall and will, when required by the said Bomeisler & Brother, George Peterman, Jacob Peterman and Robert Dobson, go on and with the brig Mary for Samana, and immediately on his arrival there, will enter into the service of the said Bomeisler & Brother, George Peterman, Jacob Peterman, and Robert Dobson, for and during the term of nine months, and from time to time, as may be agreed upon hereafter, to be accounted from the first day of January, A. D. one thousand eight hundred and twenty-nine. And the said Andrew Garrett shall and will continue and abide at the aforesaid Samana or elsewhere, and shall and will diligently and faithfully serve during

(Bomeisler v. Dobson.)

the said time, in keeping the books of accompts, or any other busi-ness wherein they, the said Bomeisler & Brother, George Peterman, Jacob Peterman, and Robert Dobson may employ him in their trade and merchandizing: and they the said Bomeisler & Brother, George Peterman, Jacob Peterman and Robert Dobson do hereby promise and agree to and with the said Andrew Garrett, his execu-tors and administrators, to pay him the sum of twenty-five dollars per month, with boarding and lodging, to the full end and term of nine months; provided he faithfully attends to the duties hereinbe-fore mentioned. And it is hereby agreed upon between the parties, that if the said Bomeisler & Brother, George Peterman, Jacob Peterman, and Robert Dobson, their executors, administrators, or assigns, shall have no further use or employment for the said Andrew Garrett, after the expiration of said time, (provided their business should so long continue,) that then, and in such case, the said Bo-meisler & Brother, George Peterman, Jacob Peterman, and Robert Dobson, their executors, administrators or assigns, that they, or either of them, after two months' notice or warning in writing for that purpose given, shall and may discharge the said Andrew Garrett from their service, paying him for his services up and in full to the time of his discharge, and provide him a passage to Philadelphia; and if the said Andrew Garrett shall wish to change his situation, or leave the service aforesaid, after two months' notice or warning in writing for that purpose given, shall and may leave their service, they paying him up and in full to the end of his services. In witness whereof, the said parties have hereunto interchangeably set their hands and seals, this first day of January, A. D. one thousand eight hundred and twenty-nine."

The defendant further gave in evidence a bill of sale by Jacob Peterman of one-fourth of the brig Mary to Robert Dobson in con-sideration of six hundred and four dollars, dated the 2d of January, 1829: and certain accounts-current between the parties, and accounts-sales rendered by the plaintiff.

The learned judge charged the jury as follows.

" The claim of the plaintiff is for his services in disposing of cer-tain goods, shipped by the brig Mary, in the year 1829, from this port to Samana, in the island of St. Domingo. The value of these services is fixed by him at forty-five dollars per month; and he alleges that he was employed twenty-three months. A claim so simple in its character, one would naturally suppose, would be capable of easy proof: for the departure of the brig might be readily ascertained; and the return of Captain Dobson was not likely to have been a secret. And yet the parties have contrived so to complicate the proof, that after so great a lapse of time, the real truth of the case, I apprehend, cannot be brought to the know-

(*Bomeisler v. Dobson.*)

ledge of a judicial tribunal, consistently with the wholesome rules by which such a tribunal is governed. Still, though the search of the truth may be hopeless, yet your duty is to deal with the evidence, to find out its proper results, and applying these as the test, bring in your verdict accordingly. Now what is the character of this case according to the evidence? The evidence consists of, 1st, The agreement of January 2d, 1829. 2d, Agreement with Andrew Garrett of January 1st, 1829. 3d, Oral testimony of Andrew Garrett. 4th, Bill of sale of part of the vessel, from Peterman to Dobson. 5th, Accounts rendered by the plaintiff. 6th, And the letters of the parties. Your task is to extract from this mass as a whole, its proper result, having reference to the issue between the parties.

The agreement of January, 2d, 1829, styles the plaintiff *one* party, and the defendants together as the *other* party; treats the first shipment as the property of the defendants, exclusive of Captain Dobson, and Captain Dobson as a mere agent to sell the goods at Samana, keep accounts, make remittances, &c., for which he is to be compensated by forty-five dollars per month, allowing him for all his expenses. It provides also for Captain Dobson's remaining under named contingencies at Samana, and acting as ship's husband; and in that event, to be entrusted in *all* business done there, in equal proportions, &c. Now if the evidence stopped here, I should say, that the meaning of this agreement was, that Captain Dobson should act for the defendants in disposing of the goods at Samana; and on proving that he rendered the services contemplated, made sales, kept accounts, remitted proceeds, &c., he would be entitled to wages at the rate of forty-five dollars per month, for the time he was so employed, whether longer or shorter, in disposing of the first shipment; and to this view the accounts in evidence conform. But the agreement with Andrew Garrett of January 1st, 1829, and the oral testimony he has given, seem to interfere with this view; for 1st, The agreement calls all the parties, (plaintiff and defendants) shippers and owners; and by bill of sale it appears that Captain Dobson had become about that time part owner of the brig. And Garrett says, Captain Dobson told him he was interested in the *first* shipment, equally with the Petermans, as well as in the other shipments; in regard to which, according to the original agreement of January 2d, 1829, he was certainly looked upon as a partner; "interested in equal proportions" is the language of the instrument. You must determine, therefore, whether the plaintiff was a partner in the first shipment; interested, as such, in this, as well as the future ones. This is the allegation of the defendants; it constitutes their chief defence; and I have been requested on their behalf, to instruct you, that if you find the plaintiff to have been a partner in the first shipment, the plaintiff must fail. And I do accordingly instruct you that if you find that the plaintiff, in regard

(Bomeisler *v.* Dobson.)

to the first shipment, was a partner with the defendants, the form of action which he has brought is not adapted to his case ; and your verdict should be for the defendants.   If you think he was not a partner at all in the first shipment, further duties will devolve upon you.   If *not* a parner in this shipment, then it would seem he was an agent for them, to dispose of the cargo, and entitled to be paid on rendering services according to the agreement, forty-five dollars per month, whilst employed in disposing of the first shipment; provided he has faithfully performed what he undertook.   He undertook to sell the cargo, make remittances in a certain manner, keep a regular set of books opened at Samana, &c. &c.   Has he performed these various duties?   You will judge from the evidence.   And you will ascertain also, how long he was properly employed in this service : recollecting that it is for services in the sale of the first shipment only, that he can claim : for as to the other shipments, he was, without dispute, a partner, and is entitled to nothing in this action.   Should you find on both the points submitted to you in favour of the plaintiff, a further question of fact will remain for your decision.   It arises thus : after this action had been brought, an effort was made by the parties to settle all their differences.   A paper it is said, was drawn, designed to effect this purpose.   This paper appears to have been very informal.   It has not been produced on the trial; having been lost or destroyed.   Mr. Phillips testifies to its contents; he says, " The purport of it he remembers distinctly; it was a complete settlement."   This paper was signed by the plaintiff, and some, but not all of the defendants. Another paper was drawn by one of the counsel of the defendants; intended, as it would seem, to supply the place of the former.   Witnesses say, the two papers were substantially the same.   The latter paper has been read in evidence without objection.   It is not signed by the plaintiff; and according to the testimony, as you will recollect, though presented to him for the purpose, he refused to sign it. You have the oral examination of several witnesses on this subject; and by consent of the defendant's counsel, an affidavit of the plaintiff has been read in evidence also.   From all the evidence you are to decide the fact, whether the plaintiff ever released to the defendants, the cause of action for which he now claims a verdict of you.   In respect to the first paper said to be a release, the plaintiff alleges it was voluntarily surrendered to him by the defendants, who had signed it.   This depends nearly, if not entirely, on the plaintiff's own affidavit.   You are not bound to believe any thing contained in this affidavit; you may believe a part, and reject the remainder ; or you may believe the whole.   I tell you distinctly, that though it was inadmissible without the defendant's consent, as he gave his consent, you may treat it as evidence, for whatever you think it proves.   The plaintiff has objected to this first paper also, that it was not signed by all the defendants.   This you will, how-

ever, consider as no objection, if you find it was executed by the plaintiff and some of the defendants; that it purported to be a complete settlement between the parties, of all their differences; and the defendants complied with what was exacted by it, of them; and that it never was surrendered by the defendants to the plaintiff.— With these remarks, I submit this branch of the defence to you as a question of fact devolving rightly upon you for decision."

A bill of exceptions was taken to this charge; and the jury having found for the plaintiff, a writ of error was taken, and the following exceptions filed.

" 1. That the judge below erred in admitting to be read in evidence by the plaintiff, the agreement among the parties, dated the 2d of January, 1829, the same not corresponding with the narr., and not being evidence under it.

2. The judge below erred in charging, that the jury should consider the first clause of the agreement of the 2d of January, 1829, as an agreement distinct from the other parts thereof.

3. The judge below erred in charging, that the said agreement had reference to shipments in which the plaintiff was not a partner, and as to which he was to be paid forty-five dollars per month; and also to other shipments in which the plaintiff was partner, and as to which he was not to be paid his forty-five dollars per month; and that the jury might find for the plaintiff, even though the agreement made the plaintiff and the defendants parties in the shipments last mentioned.

4. The judge below erred in charging, that the clause of the said agreement, providing that all business done at Samana, should be for joint account, did not apply to the first clause of the agreement. or to business therein provided for.

5. The judge below erred in submitting to the jury written evidence to be construed by them.

6. The judge below erred in charging, that the jury might find for the plaintiff, even though the agreement made the plaintiff and the defendants partners in the shipments last mentioned in the third assignment of errors."

Mr. C. *Ingersoll,* for the plaintiff in error, cited *Vickary* v. *Moore,* (2 *Watts,* 451.)  1 *Leigh's N. P.* 43, 44.

Mr. *Rawle,* contra, cited 1 *Chitty's Plead.* 334, 371.  *Columbia Bank* v. *Patterson,* (7 *Cranch,* 299.)  *Kelly* v. *Foster,* (2 *Binn.* 4.) *Felton* v. *Dickinson,* (10 *Mass. Rep.* 287.)  *Anderson* v. *Neff,* (11 *Serg. & Rawle,* 208.)  *Benner* v. *Hauser,* (11 *Serg. & Rawle,* 352.) *Miles* v. *Moodie,* (3 *Serg. & Rawle,* 211.)  *Brubacker* v. *Robinson,*

(Bomeisler v. Dobson.)

(3 *Penn. Rep.* 295.)  *Galbraith* v. *Moore*, (2 *Watts*, 86.)  *Gow on Partnership*, 95, &c.  *Van Ness* v. *Forrest*, (8 *Cranch*, 30.)  *Duncan* v. *Lyon*, (3 *Johns. Ch. Rep.* 362.)  *Venning* v. *Leckie*, (13 *East*, 7.) *Collins* v. *Rush*, (7 *Serg. & Rawle*, 147.)  *Brown* v. *Caldwell*, (10 *Serg. & Rawle*, 114.)  *Poorman* v. *Smith*, (2 *Serg. & Rawle*, 464.)

The opinion of the Court was delivered by

ROGERS, J.—Where the terms of a special agreement have been performed by the plaintiff, the law raises a duty, for which a general *indebitatus assumpsit* will lie.  In general, the declaration ought to state the agreement where it is special; but where it has been so far performed, that nothing remains but a mere duty to pay money, which it is for the plaintiffs to show, a general count is all that is required.  Here the performance of the plaintiff's stipulation was left by the Court to the jury, who have found that the plaintiff has fully complied with his part of the contract.  The contract being executed, there is nothing in the first exception.  2 *Binn.* 47.  10 *Mass. R.* 387.

It is contended that there is error in not instructing the jury that the plaintiff and defendants were partners, and that account-render and not assumpsit, was the proper remedy.  The plaintiff gave in evidence the agreement of the 2d of January, 1829, and certain letters and then rested.  The defendants proved the acknowledgment of the plaintiff that he was equally interested with the Peter-mans, not with the Bomeislers, in the first shipment, and also in the second and third.  They also gave in evidence the agreement of the 1st of January, 1829, a bill of sale of the one-fourth of the brig of which Captain Dobson was master, together with his several accounts-current with Messrs. Peterman and Bomeisler & Brother. If the defendants have been content to submit this case on the construction to be given the agreement of the 2d of January, 1829, they would have had but little reason to complain of the decision of the Court; for judging of the transaction from that agreement, disconnected from the defendant's proof, we concur with the District Court in thinking, that Dobson was the agent of the defendants and not the partner, and as such was entitled to wages at the rate of forty-five dollars per month, during the time he was employed in their service.  But the doubt arises from the introduction of other parol and written testimony by the defendants themselves; and I cannot conceive that they have any just ground of complaint, for leaving the whole case, consisting as it does, of parol and documentary evidence to the jury.  No special direction is requested; and had the Court undertaken to have given such instruction, they would perhaps have exposed themselves to an exception diametrically opposite to the one now made.  The direction would appear to me to fall in with the course pointed out by the defendants them-

(Bomeisler *v.* Dobson.)

selves, and in compliance with their views of the case. I am free to confess, that from the investigation which I have given this transaction, I should, although with some hesitation, come to a conclusion different from that of the jury. But with their decision we have nothing to do; as an error of their's, if there be one, can only be corrected on a motion for a new trial. And we have the less reluctance to leave the judgment stand; as, after all, it resolves itself into an objection to form; as the whole merits of the controversy could be, and we have reason to believe were as well tried, in this action, as they would have been in an account-render. The Court instructed the jury distinctly, that the plaintiff was only entitled to be paid for his services, provided he faithfully performed what he undertook to be performed by his agreement. They enumerated with great particularity, the various duties contained in the agreement, and put it to the jury to say, whether he had faithfully performed them. After the verdict, we are bound to believe that in all respects he has lived up to his contract; and that he has faithfully accounted for, and paid over the proceeds of the different shipments consigned to him.

Judgment affirmed.