## Agricultural  Branch  Railroad  Company  *vs.*  Fitch  Winchester.

If a railroad company is authorized to build its railroad in three sections, and, after the completion of the first section, subscriptions are obtained for the second and third sections together, the same may be collected, although it does not appear whether they are to be expended upon only one of the sections, or, if divided, how much is to be applied to each section.

Subscriptions to the capital stock of a railroad company may be collected, although the construction of the road has been commenced before twenty per cent. of each share subscribed has been paid in, contrary to the provisions of the charter.

If a statute, fixing the amount of the capital stock of a railroad company, is amended by another statute providing that the capital required to build the railroad shall be a less sum, taking subscriptions to an amount larger than the capital allowed by the last statute, but less than the capital fixed by the first statute, will not render the subscriptions invalid.

If, by the terms of subscription to the capital stock of a railroad company, it is recommended that interest be paid to stockholders on payments for stock, a subscriber cannot resist payment of his subscription on the ground that such interest has been paid.

Subscriptions to the capital stock of a railroad company will not be defeated by a subsequent amendment of the charter extending the time for the completion of the road.

Contract brought to recover the balance due upon a subscription by the defendant to the capital stock of a railroad corporation, after deducting the amount received from a sale of the defendant's shares.

The subscription paper recited that, after the granting of the original charter, and various extensions of the time for constructing the railroad, the plaintiffs were authorized by *St.* 1852, *c.* 178, to construct a railroad from Framingham to Sterling, and to build the same in three sections, the capital to build the first section to be $150,000, the second $200,000, and the third $100,000 ; the funds to be raised by subscription in shares of one hundred dollars each ; that the first section had been built, and, by *St.* 1860, *c.* 42, an amendment of *St.* 1852, *c.* 178, was passed, providing " that the capital required to build the second section of said road shall be $100,000, and the capital required to build the third section shall be $50,000 ; " and continued thus : " Now, therefore,. be it known that we, whose names are hereunto subscribed, in consideration of the premises," " have and do hereby become

subscribers to the capital stock of the said railroad company, in the two remaining sections thereof respectively; and we do hereby promise said company, and faithfully undertake, each of us respectively, to pay into the funds of said company, in such instalments as the president and directors, under provisions of law, may require, one hundred dollars for each share set against our names respectively;" "provided, however, and it is hereby expressly understood, that we are not to be held to pay any part of our several subscriptions made as aforesaid, until the whole amount of said capital stock is actually subscribed by *bona fide* stockholders; and under this provision we severally promise and agree to and with said company that, when the full amount of said capital stock is subscribed as aforesaid, and when the said president and directors of said company shall have legally assessed and declared payable one or more assessments, amounting in the aggregate to twenty per cent. upon each share subscribed for by us respectively, we will pay the same;" and, in case of failure, authority was given to sell the shares, and the subscribers were to be indebted to the company for any deficiency arising from the sale. By a further clause, the subscribers recommended that interest be paid to stockholders on payment for stock, till the said sections of the railroad should be opened for travel.

The above subscription paper was signed by the defendant on the 17th of October 1860, for ten shares in the second and third sections. Assessments amounting to one hundred dollars on each share were laid in 1864 and 1865, and notice given, and the defendant's shares were subsequently sold at auction for four hundred and fifteen dollars. On the 13th of June 1864, the president and directors of the company filed in the office of the secretary of state a certificate declaring that all the shares of the second and third sections of the road, namely, $100,000 for the second, and $50,000 for the third, had been subscribed for by responsible persons, and that a sum equal to twenty per cent. of the par value of all the shares of such portion of the stock had been actually paid into the treasury of the company. There had been, in fact, subscriptions to said second and third sections to the amount of $170,000; but on one hundred of the

shares nothing had then been paid, nor has the whole thereof ever been paid. The construction of the road was commenced in July 1864. Before the commencement of this suit, interest had been allowed to subscribers on their payments of stock.

On the above facts, which were agreed in the superior court, the defendant contended that the contract of subscription was void for uncertainty; that twenty per cent. had not been paid on each and every share of the capital stock, as required by the statute and contract of subscription, before the commencement of the construction of the road; that the corporation, in its issue of stock for the second and third sections, had exceeded the amount to which it was limited by *St.* 1860, *c.* 42, and that the payment of interest to stockholders was illegal; and that for these reasons the plaintiffs could not maintain their action. But judgment was rendered for the plaintiffs, and the defendant appealed to this court.

*P. E. Aldrich*, for the defendant.

*G. A. Torrey*, for the plaintiffs.

CHAPMAN, J.- 1. The defendant contends that this action cannot be maintained, because the terms of his subscription to the stock of the company are uncertain and indefinite. It appears that the company was authorized by its charter to build the road in three sections, with a separate and distinct capital stock for each section. The first section having been completed, subscription papers were prepared for the two remaining sections together, and the defendant subscribed one of these, stating in writing, against his name, that it was for the second and third sections. The alleged uncertainty is stated to consist in this : " that it does not appear whether the whole of the defendant's subscription was to be expended upon one of the sections named, or, if it was divided, how much was to be applied to each section." The obvious answer to this position is, that it was not illegal to build the two sections together, and therefore the uncertainty relates to an immaterial matter. The question as to the proportions in which it shall be applied to each section when collected does not arise in this case.

2. It is objected that twenty per cent. had not been paid in

upon each share subscribed for, according to the requirement of *St.* 1852, *c.* 178, § 6, before the construction of the two sections was commenced. But the defendant paid nothing on his subscription ; his shares were sold to pay the assessments upon them, and this action is brought to recover the balance of the assessments. If the fact that twenty per cent. had not been paid in on each and every share would leave the company without authority to commence their work, still it would be no objection to the collection of assessments ; and the commencement of the work cannot invalidate the subscriptions, or defeat this action to recover assessments upon the shares.

3. It is contended that the company has exceeded its authority by issuing stock to the amount of $170,000. It appears that by *St.* 1852, *c.* 178, § 5, the company was authorized to increase its capital stock for the purpose of the extension of the road by the sum of $300,000. By § 6, $200,000 was to be the capital of the second section, and $100,000 the capital of the third section. By *St.* 1860, *c.* 42, the capital required to build the second section was to be $100,000, and the capital required to build the third section $50,000. This latter act is to be regarded as an enabling statute, and not a restrictive one. It did not revoke the authority to make the capital stock $300,000, if necessary. The stock subscribed is less than that sum.

4. It is objected that interest was allowed to subscribers on their payments before the road was completed. The answer to this objection is, that the subscription paper, signed by the defendant, recommends that this payment be made. His assent estops him from making the objection.

5. It is objected that the company has obtained legislative amendments to their charter, extending the time originally prescribed for the completion of their road, and has extended the time under these acts. The objection is made in argument, but does not appear in the agreed statement of facts. Formerly when charters were granted, it was not customary for the legislature to reserve power to alter or modify them. The case of *Middlesex Turnpike Corp.* v. *Swan,* 10 Mass. 384, arose under such a charter. It was held that the defendant had subscribed

to an object specifically ascertained, and, the terms of his contract being definite, an alteration of the route of the road was an alteration of his contract, and, therefore, it could not be enforced. But all our acts of incorporation, granted since March 1831, have been subject to amendment, alteration or repeal at the pleasure of the legislature. Gen. Sts. *c.* 68, § 41. It was held in *South Bay Meadow Dam Co.* v. *Gray,* 30 Maine, 547, that subscribers to the stock of corporations, subject to be thus changed, should be regarded as consenting to the change. This doctrine has been in many cases applied to changes and extensions in the route of a railroad, plank-road or canal. *Schenectady, &c. Railroad* v. *Thatcher,* 1 Kernan, 102. *Buffalo, &c. Railroad* v. *Dudley,* 14 N. Y. 336. *Banet* v. *Alton, &c. Railroad,* 13 Illinois, 504. *Pennsylvania & Ohio Canal Co.* v. *Webb,* 9 Ohio, 136. *Gray* v. *Monongahela Navigation Co.* 2 Watts & S. 156. There are many other authorities to this point. Nothing is more common than alterations of railroad charters extending the time for completing the road, and such extensions do not fundamentally or very essentially change the character of the charter. We think it reasonable to hold that subscribers to the stock impliedly consent to them.　　　　　*Judgment for th plaintiffs.*