## FRANKLIN GLASS COMPANY *vs.* CALEB ALEXANDER.

Where, by an act of incorporation, the shares are subject only to a sale for delinquencies; and where the original members signed a written obligation to pay all assessments on their shares, it was held that no action lies on such promise, if, before the assessments sued for, the member, *bona fide* and for a valuable consideration, sold out his shares, though he afterwards bought in the same shares, and after his re-purchase the assessments were made.

This was assumpsit to recover certain assessments, made on six shares in the stock of the Franklin Glass Company.

At the trial in October, A. D. 1820, under the general issue, it appeared in evidence, that by the act of incorporation no remedy by action was expressly given for assessments, but merely an authority to sell the shares in case of delinquencies. A subscription paper, however, was introduced, which the defendants and other original members signed, and in which each promised to pay such sums as were assessed on his shares " for the purpose of raising a capital " to answer the objects of the corporation." The corporation became duly organized in March, A. D. 1812.

In May, A. D. 1813, the defendant, being owner of six shares, conveyed one of them to a Mr. *Freeman*, and in November of the same year, conveyed the other five to *Thos. K. Brace.* The consideration of these conveyances being disputed by the plaintiffs, the question was submitted to the jury, who found that they were all conveyed *bona fide*, and for an adequate consideration.

In April, A. D. 1815, the defendant repurchased the shares of *Brace* and soon after purchased at auction the share conveyed to *Freeman.* Two hundred and ninety dollars had been raised on a share, when, in November, A. D. 1818, the assessments were made, which are now sued for, and though numerous other facts were put into the case, the decision of

the court renders it unnecessary to state the remainder of them.

A verdict was taken for the defendant by consent, subject to the future opinion of the court.

*Reed* and *J. C. Chamberlain*, counsel for the plaintiffs.

*J. H. Hubbard*, for the defendant.

WOODBURY J. delivered the opinion of the court.

It is well settled, that when an act of incorporation gives no express remedy against a member for assessments, he is liable to no action for them by virtue of his membership.

The corporation can enforce payment only by a sale of his shares; and if any action can be sustained against him, it must be founded on a distinct private promise to pay the sums assessed. 9 *John* 217.—14 *ditto* 244.—13 *Mass. Rep.* 406.—4 *ditto* 597.—6 *ditto* 42.—5 *ditto* 80, 491.—1 *John C.* 86.—8 *Mass. Rep.* 138.—10 *ditto* 327.—1 *Binney* 70. The present action is, therefore, attempted to be sustained on such a promise. But it cannot be sustained unless that promise is susceptible of one of the following constructions.

It must be deemed either an undertaking to pay all assessments, which may ever afterwards be made on the shares originally taken, though the promissor cease to be a member and have no remedy over on the existing members; or an undertaking to pay all assessments on such shares while he remains a member, though not owning them; or an undertaking to pay all assessments on them while he shall own them, though not in the capacity of original proprietor.

In weighing these proposed constructions, it should not be forgotten, that the promise, on which the plaintiffs declare, is an express one, and, in any view of it, imposes burthensome liabilities beyond those usually contained in acts of incorporation.

The first construction, that the promissor is forever liable to pay all assessments, though made after he ceases to be a member, rests so much on implication and exceeds so manifestly the letter as well as spirit of the contract, we cannot adopt it.

The language of the contract is to pay the sums assessed on " his" shares and not on the shares, which *bona fide* be-

F.G. Company
*vs.*
C. Alexander.

long to another person at the time of any subsequent assess-ment.    Had the promise been superseded by a similar sec-tion in the charter, the duty imposed would doubtless have been, that every "member," and not one who had ceased to be a member, should pay the sums afterwards assessed on " his" respective shares.

To extend the spirit of the promise farther would be to travel beyond the letter, not to en force substantial justice, but to entail on every promissor and his heirs forever a lia-bility for all assessments on shares of a corporation in which they held no interest, in whose profits they had no dividend, over whose affairs they had no control by voting, and against whose members they were not empowered, by the charter or the subscription paper, to prosecute any remedy for what was thus advanced.

Corporations, whose concerns are judiciously managed, never need such an alarming power over the person and private property of their members; while corporations, whose concerns are not judiciously managed, ought not to possess it.    Much less does the public security require any such extraordinary liabilities; for experience has fully evinc-ed, that severe penalties on those only who misbehave, aided by the watchful eye of private interest, as in case of loss, by a forfeiture of the capital stock, will generally furnish the best safeguard to all.    8 *Mass. Rep.* 472, *Bond vs. Appleton.* —7 *D. & E.* 45, *Huddersfield, Can. Com. vs. Buckley.—Aver-ill vs. Wilson, Hillsb. Dec.* 1814.

The second construction, that this may be deemed a prom-ise to pay all assessments on the shares then owned, so long as the promissor belongs to the corporation, though at the time of the assessment he may not own those particular shares, is exposed to almost the same objections.    For the promise is not to pay the assessments on certain enumerated shares, by whomsoever owned, but the assessments on " *his*" shares. It is only " his" shares, that is, those which belong to him at the time of the assessment, in which he possesses any inter-est, from which he receives any income, in right of which he is empowered to vote, or the title to which he can trans-

fer. Indeed he is no more a member, so far as respects the shares owned by others, than he would be, if devoid of all interest whatever in the corporation. On principle, then, to extend the construction to such a case would be as inequitable as to render an original member in any other case liable for an assessment made after he ceased altogether to be a member.

The question concerning the other remaining construction, is of more difficult solution.

To render an original member liable on his promise to pay assessments, when those assessments are made on shares, which he at first owned, then conveyed *bona fide* and afterwards repurchased, cannot be resisted on the ground that the shares are not now "his," or that he has not power to vote in consequence of them, or that he does not reap their profits and possess every remedy over to which he ought to be entitled. But it is to be remembered, that this is a private promise, on which the action is founded, and not a statutory liability, imposed on all members; and that when the promise was made, the defendant was an original proprietor and made the promise concerning shares owned in that capacity. It is to be remembered, also, that the person, of whom he last purchased, was not subject to any such action, and, consequently, on general principles, the defendant, his vendee, bought the shares with no other liabilities than what attached to them in the hands of his immediate vendor. There was a period, when the defendant was neither owner of these shares, nor, for aught which appears, a legal member of the corporation. His liability on this contract then ceased, was dissolved; and if a mere repurchase of another person's interest, who was likewise, at that time not liable on the contract, will subject the defendant, it must be done by the express letter or spirit of the promise. Without doubt a promise might be clothed in such broad and explicit language as to bind the maker of it in a case like the present.

But we apprehend, that an ordinary subscription paper, by the original members, when their shares were worthless, for the mere purpose of raising a capital to commence busi-

F.G. Company
vs.
C. Alexander.

ness, was never designed to subject them to the payment of assessments, made after more than two hundred dollars had been raised on a share ; and, though made to purchase stock for labor, yet made after the defendant had ceased to be an original member and belonged to the corporation only as a subsequent stockholder.

Whenever the shares acquire a value by assessments being paid so as to demand a price in the market, the necessity for a remedy on the subscription ceased ; and though the subscribers to it, who still continued as original members, might be liable to an action when the assessments were to "raise capital," yet no strained construction should be adopted to render others thus liable. The sale of the shares ought to be a sufficient remedy to obtain payment of the subsequent assessments ; the genuine object of the promise was accomplished when capital had been raised to commence business and a value given to the shares ; the subscribers were all original members and doubtless contemplated no liability but as original members ; they all possessed a power to assign their shares and cannot be presumed to have loaded themselves with a premeditated and unnecessary responsibility for the assessments after they should cease to have any interest or influence in the corporation, and when once *bona fide* exempt from liability they could not intend, that those liabilities should re-vest, if they re-purchased of others not liable, and came into a company which might then be mostly constituted of subsequent stockholders, who were not liable to any such burthen.

Whether in case of a sale *mala fide* and a re-purchase of the same shares, the promise would not still bind, we forbear to offer any opinion.

The only settled analogy, which has occurred to us under this general head, is that after a devise of real estate, should the testator sell a part of the land and before his death repurchase it, still that part will not pass under the will.(1)

The following illustration may place a portion of the argument in a light still stronger.

(1) 3 Burr.
1496.—Justin.
Inst. 509.

Were the defendant now a member of the corporation, as a guardian in right of a ward, as an executor in right of a testator, or as a trustee to any general uses, it would not be pretended, that, though he represented the same shares, which he formerly owned in his own right, his liability to an action for the assessments would revive. No liabilities attach to him, which did not belong to those he represents; and they, being subsequent stockholders, were unaffected by the promise. So in this case, he belongs to the corporation not as an original member, but as a subsequent stockholder; and by the re-purchase, merely represents, his immediate vendor. The promise, therefore, no more binds him on account of this re-purchase than it bound his vendor, or than, if after his first sale, he had still continued, devoid of any interest whatever in the company.

*Judgment on the verdict.*