McDonough agt. Phelps.

----

# SUPERIOR COURT.

## Augustus R. McDonough agt. Isaac N. Phelps and John J. Phelps.

In the superior court of the city of New-York at any rate, no *attachment* can issue against a *foreign corporation* unless there is an action regularly commenced. That can be by a resident for any cause of action; (§ 427 *of the Code;*) but to render the suit effectual there must be *property* within the state, or the cause of action must have arisen therein.

The statute of 1845, authorizes a judgment and execution creditor to sue at law or in equity, in his own name, or in the name of the corporation, any debtor, or any stockholder, or several or all the stockholders, to compel the payment of any amount not paid in, or remaining due upon each share of the capital

McDonough agt. Phelps.

stock subscribed or held by them, or any of them, and may recover in such suit any sum (to the amount due to the plaintiff,) which such defendant would be liable to pay in any event in the state or government where such corporation is located.

The theory of the statute is, to give a right against shareholders, co-extensive with, and only co-extensive with the right of the corporation in the state in which it is located. If that corporation could sustain the action, it may be sustained under the statute; but not otherwise. And it must be an action which could be sustained in the state where the corporation is located.

Where the charter of a corporation created by and under the laws of the state of Connecticut, authorizes the directors to *require payment* of the subscription money, a debt is incurred which may be sued for independently of the cumulative remedy given by a *forfeiture* of the stock.

The plaintiff in this case, as a judgment and execution creditor of the Washington Stone Dressing Company, a corporation organized under the general law of Connecticut, regulating joint stock corporations, brought his action against the defendants, subscribers and shareholders of stock in such corporation, alleging fraud on the part of the defendants in making and carrying out a certain agreement between the defendants and other persons interested in the purchase of stock of said corporation, which fraudulent agreement as alleged, was contrary to the statute law of Connecticut, and demanded judgment for $3,718.59.

*Held*, on demurrer, that to sustain the suit, the court must see that the following points are plainly established: 1st. That the corporation could, in Connecticut, succeed in such a suit. 2d. That it is clear the subscription of the stock in the manner charged was illegal. 3d. That it is clear it was incapable of ratification by the directors or stockholders; or if capable, has not been ratified. 4th. That a demand for payment in money can be supported, and that a forfeiture of the stock is not the only remedy, and, 5th. That such an action could be brought there, without making it on behalf of creditors at large, and against stockholders generally. And it is no objection to this view that some of the points suggested appear to be (though not really) matters of law.

The right to make calls upon members of a corporation and collect the amount of their subscriptions, is a franchise conferred by the state creating the corporation; and a franchise connected with property. The legality of the law of another state which deprives the corporation of this right without being heard in its assertion, is doubted.

*New-York Special Term, May,* 1856.

DEMURRER to complaint. The facts will appear in the opinion.

C. F. SANFORD, *for defendants.*

MR. ANDREWS, *for plaintiff.*

HOFFMAN, Justice. The material facts in the case are these:

McDonough agt. Phelps.

The plaintiff on the 12th of February, 1856, recovered a judgment in this court against the Washington Stone Dressing Company, for the sum of $3,718.59.

This company was a corporation organized in December, 1852, under the general law of Connecticut, regulating joint stock corporations, passed in 1837. A certificate was filed in the office of the proper town clerk in Connecticut, pursuant to the provisions of the statute, by which the capital stock was declared to be $100,000.

An execution was issued upon the judgment to the sheriff of the county of New-York, and returned unsatisfied. The defendants, partners in business under the name of I. N & J. J. Phelps, on the 15th December, 1852, subscribed, in their partnership name, for two hundred shares of the capital stock of such company, being for the sum of $5,000. The defendants have not paid the amount of their subscription, nor any part thereof in money; but before the company was organized, it was agreed between them and certain other persons, to purchase certain patent rights for cutting, dressing or rubbing stone; that a company should be formed to have a capital of $100,000; that the proposed purchasers should subscribe for $50,000 of the same, and the patent rights so purchased should be assigned and transferred to the company, and should be in full of such subscription; and that the subscribers for the residue of such stock should pay their subscriptions in money.

The defendants and such other persons thereupon purchased the patent rights for $10,000. The company was then organized, and the defendants and such other purchasers subscribed for $50,000 of the capital, the two hundred shares of defendants being a part thereof; the remaining $50,000 being subscribed by persons not interested in the purchase, and having no knowledge of the agreement.

The patent rights were then assigned to the company, and certificates of stock issued to, and received by the defendants and the other purchasers, to the amount of $50,000, which certificates purported to represent stock fully paid in, and were not distinguishable from other certificates issued for stock, the

McDonough agt. Phelps.

par value of which had been paid in money; that the defend-ants' interests in the patents, for which the stock to the amount of $5,000 was issued to them, had been actually purchased for the sum of $1,000, and was not at the time of the transfer to the company, of greater value than $1,000.

It is insisted that the agreement so made and carried out be-tween the defendants and the other purchasers, was fraudulent, and contrary to the statute law of Connecticut. And the plain-tiff demands judgment for the sum of $3,718.59, with interest from the 14th February, 1856.

To this complaint a demurrer is interposed, that the com-plaint does not contain facts sufficient to constitute a cause of action.

The statute of Connecticut, which it is supposed bears upon the question, was by consent read upon the argument. The provisions which appeared at all pertinent, are the following : By the 197th section, the amount of the stock shall be fixed and limited in the articles of association, and shall in no case be less than $4,000, nor more than $200,000 ; and shall be divided into shares of twenty-five dollars each. The 203d section directs that the directors may call in the subscription to the capital stock by instalments, in such proportions and at such times and places as they shall think proper, by giving such notice as the by-laws shall prescribe ; and in case of the neglect or refusal of a stockholder to make such payment for 60 days after the same is payable, and he notified thereof, the stock may be sold by the directors at public auction ; the pro-ceeds to be applied in payment of the instalment and expenses, and the residue paid to the owner.

The 210th section provides for making and recording of a certificate of incorporation, in which is to be stated the amount of the capital stock, the amount actually paid in, the names of the stockholders, and amount of stock respectively held by them.

By the 212th section, annual returns are to be made, show-ing the amount of capital actually paid in, the amount invested in real estate, the amount in personal estate, with their debts

and credits. And the 214th provides, that if the capital stock shall be withdrawn and refunded to the stockholders, before the debts for which such stock would have been liable are paid, the stockholders shall be responsible to any such creditor in an action founded on the statute, to the amount of the sum refunded to them respectively.

The system of proceeding against a foreign corporation in this state, originated in the Revised Statutes of 1830. The 15th and several subsequent sections of the act, (2 *R. S.* 459,) gave the right to sue, and prescribed the mode. The language in the 15th section is, that such suits may be commenced by attachment. The revisers refer to *McQueen* agt. *The Middletown Co.*, (16 *John.* 5,) as deciding that an attachment would not lie against a foreign corporation, under the absent debtor act; and to a decision in chancery, affirmed on appeal, that that court had no jurisdiction to attach its property.

The protection of our citizens required that some provision should be made to render such corporations amenable to our laws, and in our own courts. The sections had, therefore, been drawn in analogy to the act as to attachments against absconding and non-resident debtors. Accordingly the whole theory of the provisions is one of a process against property found in the state. But I do not understand that anything prevents the legislature from enacting that suits may be commenced in any other mode, which will operate upon foreign corporations, as much as upon individuals who are foreigners. Wherever a judgment could be obtained against the latter upon a sufficient notice, it may be so regulated as to be obtained against the former. Accordingly, the Code, (§ 134,) has provided that a summons may be served upon a president, director, &c., of such a corporation, in a case in which it has property within the state, or the cause of action arose therein. The 33d section and 427th confer jurisdiction on this court, and the last enlarges the cases of jurisdiction as to resident plaintiffs. They may sue for any cause of action.

The 227th, 228th and 237th sections also are consistent with the proposition that the action in cases of a foreign corporation

McDonough agt. Phelps.

is to be commenced in the ordinary mode by summons; indeed, that under the 127th section it cannot be commenced in any other mode. The 135th section provides for service by publication in an action against a foreign corporation, but only where it has property within the state, or the cause of action arose therein. By the act of March 15th, 1849, (*Sess. Laws, ch.* 107,) suits might be brought in the supreme court, superior court and court of common pleas, against a foreign corporation for the recovery of any debt or damages liquidated or unliquidated, arising upon contract made, executed or delivered, within this state, or upon any cause of action arising therein. Such suit might be commenced by a complaint and a summons together with an attachment, as now provided by law, and service may be made as provided by sections 113 and 114 of the Code. It is, of course, to be assumed that the judgment in the present case, was regularly recovered.

It appears to me, that in this court at any rate, no attachment can issue against a foreign corporation, unless there is an action regularly commenced. That can be by a resident for any cause of action, (§ 427 ;) but to render the suit effectual, there must be property within the state, or the cause of action must have arisen therein.

I am thus brought to the question first raised, whether the 36th section of the statute, (§ 1, *Laws* 1845, *ch.* 234,) can apply at all in the present case. In its strict letter it is only applicable when judgment has been obtained in a suit *commenced by attachment* against a foreign corporation. My conclusion is, as before stated, that in this court the suit cannot be commenced by attachment simply.

The 471st section of the Code does not appear fully to remove the difficulty. The Code is not to affect any special statutory remedy, not heretofore obtained by action, nor any existing statutory provisions relating to actions not inconsistent with the Code, and in substance applicable to the actions thereby provided. It also expressly preserves chapter eight of the Revised Statutes, in which attachments are provided for. But the act in question was not passed until 1845. It is pub-

lished in the revised third edition (of 1846,) as section 36. The court in the case of the *Bank of Commerce* agt. *The Rutland & Wash. R. R. Co.*, (10 *Howard*, 1,) treats the Revised Statutes, and the act of 1849 amending them, as still in force. But that does not touch the question of the act of 1845.

Leaving this question as one of doubt, I proceed to the examination of the provision of the act of 1845. The judgment and execution creditor may sue at law or in equity in his own name, or in the name of the corporation, any debtor, or any stockholder, or several or all the stockholders, to compel the payment of any amount not paid in or remaining due upon each share of the capital stock subscribed or held by them, or any of them, and may recover in such suit any sum (to the amount due to the plaintiff,) which such defendant would be liable to pay in any event, in the state or government where such corporation is located.

The theory of the statute, I apprehend, is this; to give a right against shareholders, co-extensive with, and only co-extensive with the right of the corporation in the state in which it is located. If that corporation could sustain the action, it may be sustained under the statute; but not otherwise. It is clear, also, that it must be an action which could be sustained in Connecticut.

Then I am to ascertain that by the law of Connecticut, precisely the present action in its present form could be sustained by the corporation or by the present plaintiff, in that state. The very first question then would be, whether the defendants if sued in Connecticut by the company, might not avoid any judgment by a forfeiture of the right to any stock?

In our state, the law finally resulted in the rule that where a subscription involved a promise to pay the amount, an action could be sustained although a forfeiture of the stock on non-payment was allowed. The remedy was cumulative. (*Troy R. R. Co.* agt. *McChesney*, 21 *Wend.* 296; *Herkimer Co.* agt. *Small, id.* 274; *Same* agt. *Same*, 2 *Comst.* 330; *Morris Canal Co.* agt. *Notham*, 2 *Hall*, 240; *Harlem R. R. Co.* agt. *Seixas, id.* 509.)

The law in Massachusetts is the same upon the same circumstances. (*Salem Co.* agt. *Roper*, 6 *Pick.* 31.) But in that state if there is no express contract to pay, nor liability created by statute, no action will lie on the implied assumpsit. The forfeiture is all that the company is entitled to. (*Andover Co.* agt. *Gould*, 6 *Mass.* 42; *Middlesex Tr. Co.* agt. *Swan*, 10 *id.* 587; *Chester Glass Co.* agt. *Dewey*, 16 *Mass.* 94.) And the same is the law in New-Hampshire. (*Franklin Co.* agt. *Alexander*, 2 *N. H. Rep.* 380;) of Pennsylvania; (*Canal Co.* agt. *Janison*, 1 *Binney*, 70;) and of Georgia, (8 *Georgia Rep.* 486.) In Vermont, assumpsit was sustained on a subscription payable in cash or grain, there being no law of the state permitting a sale upon a forfeiture. (*Essex Bridge Co.* agt. *Tuttle*, 2 *Vermont Rep.* 393.)

As far as I can ascertain the law of Connecticut, it is this: Where the charter authorizes the directors to *require payment* of the subscription money, a debt is incurred which may be sued for independently of the cumulative remedy given of a forfeiture of the stock. (*Hartford R. R. Co.* agt. *Kennedy*, 12 *Conn.* 499; *Ward* agt. *Griswold M. Co.*, 16 *id.* 593.) In the *Danbury & Norwalk Co.* agt. *Wilson*, (22 *Conn.* 452,) the rule in that state is thus stated, that "by the subscription of a person to the stock of a railroad corporation, of the number of shares annexed to his name, on the terms, conditions and limitations mentioned in the charter, and the allowance to him of the shares so subscribed, the relation of stockholder and company, as between him and the corporation, is created, from which the law implies a promise by him, to pay instalments ordered by the directors pursuant to the charter." (*The Hartford & New-Haven R. R. Co.* agt. *Kennedy*, 12 *Conn. Rep.* 499.)

I am not then prepared to say whether by the law of Connecticut, there would be a remedy other than forefeiture in this case. The language of the 208th section is, that the directors *may call in* the subscription to the capital stock in such proportions, and at such time and times as they shall think proper, and in case any stockholder shall neglect or refuse payment, after a notice as prescribed, the stock shall be sold at

public auction, and the proceeds first applied in payment of the instalment called for, and expenses, and the surplus refunded to the owner.

It may be that this provision is not equivalent to an authority to *demand payment* of the subscription. It may be that the principles of the valuable case of the *Kennebec &c., R. R. Co.* agt. *Kendall*, (31 *Maine Rep.* 610,) would govern this case. An agreement to subscribe to the stock for a given number of shares did not create a personal liability; neither the charter nor any statute imposed such liability, and it did not arise from the agreement. See also the observations of the court, upon the case of *The Hartford & New-Haven Co.* agt. *Kennedy*, (12 *Conn. Rep.* 499.)

It is true that by the law of several states, upon a judgment and execution returned unsatisfied against a company, the creditor may sustain an action to compel payment of the amount of unpaid subscriptions to satisfy his demand. Such is the case in Ohio, (*Henry* agt. *The Vermilion R. R. Co.*, 7 *Ohio Rep.* 187;) in Alabama, (*Allen* agt. *Montgomery R. R. Co.*, 11 *Alb. Rep.* 437;) in Maryland, (*Hall* agt. *U. Ins. Co.*, 5 *Gill*, 484;) in South Carolina, (*Haslett* agt. *Wotherspoon*, 1 *Strob. Eq. Rep.* 209;) and in Georgia, (*Hightaver* agt. *Heaton*, 8 *Georgia*, 486.) And in the case in Ohio, it was held that an agreement to secure to any stockholder the privilege of paying up in store goods, or otherwise except in money, was a fraud upon other stockholders, and payment in money might be enforced.

In our own state a similar proceeding was taken in the leading case of *Slee* agt. *Bloom*, (19 *John. Rep.* 456.) But in *Mann* agt. *Pentz*, (3 *Comst.* 415,) it was held under the Revised Statutes, (2 *R. S.* 463, § 42, (36),) that the proceedings under a judgment to sequestration, does not effect at once a dissolution of the company; that a receiver under this section could not sustain a suit against a stockholder who had paid up all the calls. He merely represented the company, and could collect only its assets proper. But he could sustain an action to recover unpaid calls from delinquent stockholders. The capital

stock of a corporation is a trust fund for payment of its creditors.

No such action, however, could be sustained except in equity, by taking an account of the assets and debts, and making all the delinquent shareholders parties, and such a bill was to be filed by the creditor on behalf of himself and all others, not by the receiver. Some other authorities in other states may be usefully noticed.

In *Mann* agt. *Cook,* (20 *Conn. Rep.* 178,) it was decided that a receiver appointed by a court in New-York of a company organized in that state, could sustain an action against a stockholder resident in Connecticut, to compel him to pay up the amount of his unpaid subscription. The plaintiff as representative of the creditors, could bring a suit. That the directors could not receive a subscription at less than the par value of the stock, under a private arrangement. It would operate as a fraud upon creditors and other stockholders.

(*Sackett's Harbor Bank* agt. *Blake and others,* 3 *Rich. Eq. Rep.* 226.) The Jefferson Woolen Company was incorporated by the state of New-York, and Ann Izard, who afterwards married the defendant Blake, became a stockholder. The corporation made two notes, which were discounted by the plaintiffs. The property of the company was afterwards sold on execution, and it became dissolved.

The act of New-York of 1811, as to the individual responsibility of stockholders upon a dissolution and insolvency, was in the case. The bill charged an application to other stockholders, and that they had already paid the amount they were bound to contribute; that there were no other members known to the plaintiffs from whom a recovery could be had; that the defendants had not paid anything towards the debts of the company. These material facts it is stated, were proven. The bill was to enforce the payment of the plaintiff's demand. The court held, that the act of New-York, impairing a personal responsibility of stockholders in derogation of the common law rule, was valid.

2d. That the interpretation of the act given by the tribunals

in New-York, would be adopted in Virginia. 3d. That these decisions settled that a case of dissolution had occurred. 4th. That the other stockholders need not be joined. And a decree for the amount of the subscription (deducting a certain sum paid before on account of debts,) was made. In these cases, we find the principle that the tribunals of other states will enforce against a resident stockholder the same rights which the company, its creditors or representative, could have enforced against him, in the state which created the corporation.

After some hesitation, I consider that the last clause of the act of 1845, involves the proposition that if an action could not be sustained in Connecticut without making all the stockholders parties, for a general account and distribution, it cannot be supported here. How that is, does not appear. It would be singular that a separate action could be allowed which could not be permitted against a domestic corporation, nor in Connecticut itself, if the law be similar there to what it is here.

My conclusions are, that to sustain a suit, the court must see that the following points are plainly established; that the corporation could, in Connecticut, succeed in such a suit; that it is clear the subscription of the stock in the manner charged was illegal; that it is clear it was incapable of ratification by the directors or stockholders, or if capable has not been ratified; that a demand for payment in money can be supported and that a forfeiture of the stock is not the only remedy, and that such an action could be brought there without making it on behalf of creditors at large and against stockholders generally.

Nor is it an objection to this view, that some of the points suggested appear to be matters of law. These are, however, in truth, matters of fact. The question is, could the suit be supported in Connecticut by the corporation? That is a question of fact, and the law of Connecticut is matter of fact for us, as much as the other matters purely and admittedly such.

There is one other view of this case which may deserve seri-

ous consideration. A corporation is a creation of the law of the state adopted for the promotion of its internal prosperity or regulation; among its franchises is everything which regards its management, the obligations of its members, their relations among each other, and to the aggregate body. The right to make calls upon such members and collect the amount, is a franchise conferred by the state; and a franchise connected with property. I doubt the legality of the law of another state which deprives the corporation of this right without being heard in its assertion.

Judgment for the defendants on the demurrer with costs, and liberty to amend the complaint in twenty days, as advised.